NICHOLAS J. MANN

*v.*

PAUL JUMMEL.

*Opinion filed December 18, 1899—Rehearing denied February 7, 1900.*

1. DEEDS—*a manual delivery is not essential to the validity of a deed.* A recorded deed releasing a trust deed is valid though there is no manual delivery to the trustee, where the grantee agreed with the grantor to have the deed made and recorded and paid the expense of having it done.

2. RELEASE—*when subsequent purchaser is protected by trustee's release.* A deed of release by a trustee holding the legal title and empowered by the trust deed to re-convey, will protect a subsequent purchaser where the record shows the debt to be long over-due, and the only parties appearing to have an interest in the trust deed are the grantor and the trustee.

3. PRIORITY—*when right of priority is lost by negligence.* One purchasing notes payable to the maker's order and secured by a deed of trust conveying the legal title to a trustee; who fails to record the assignment of the notes to himself and permits the record to show the debt to be long over-due by not recording an extension agreement, is negligent of his rights and loses priority as against one purchasing after the recording of the trustee's release deed, executed long after the debt was due.

4. SAME—*party may claim benefit of facts shown by the record though he purchased on representation.* One purchasing a mortgage upon the representation that it is a first lien is entitled to the benefit of everything appearing of record which will sustain his rights, whether he examined the records or not.

*Jummel v. Mann,* 80 Ill. App. 288, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding.

IVES, MASON & WYMAN, for appellant:

A subsequent purchaser, merely as such, is entitled to priority, if at all, only by virtue of the Recording act. *Schultze* v. *Houfes,* 96 Ill. 335; 1 Pomeroy's Eq. Jur. secs. 413, 415, note 1; 2 id. sec. 680; Wade on Notice, sec. 196;

*Berry* v. *Insurance Co.* 2 Johns. Ch. 603; *James* v. *Morey*, 2 Cow. 246.

To enable a purchaser to make the defense of a *bona fide* purchase for value he must either have acquired the legal title itself or the best claim on the legal title. *Chytraus* v. *Smith*, 141 Ill. 231; *Bruschke* v. *Wright*, 166 id. 183; 16 Am. & Eng. Ency. of Law, 833; *Wailes* v. *Cooper*, 24 Miss. 208; *Brown* v. *Wood*, 6 Rich. (S. C.) 155; 2 Dembitz on Land Titles, 972; 2 Pomeroy's Eq. Jur. sec. 712.

The trust follows the legal title wherever it goes, except it (the legal title) comes into the hands of a *bona fide* purchaser for value. *Attorney General* v. *Williams*, Wilm. 1; *Gilman* v. *Hamilton*, 16 Ill. 225; *Alwood* v. *Mansfield*, 59 id. 496; *Insurance Co.* v. *Spaids*, 99 id. 249; *Henschel* v. *Mamero*, 120 id. 660; Pomeroy's Eq. Jur. secs. 1048, 1051, 1058, 1080; sec. 767, note; sec. 988, note.

If the trustee conveys the estate by a breach of trust, the *cestui que trust* may follow the estate into the hands of a volunteer whether he has notice of the trust or not, and into the hands of a purchaser for value if he has notice of the trust. "Equity follows the title and fastens upon it the original trust," and a purchaser with notice becomes a trustee, and liable in the same manner as the person from whom he purchased. *Railway Co.* v. *Swannell*, 157 Ill. 616; 2 Perry on Trusts, (2d ed.) sec. 828; 1 Perry on Trusts, (2d ed.) secs. 217, 222, and cases cited; *Wilson* v. *Byers*, 77 Ill. 76; *Bethel* v. *Shark*, 25 id. 173.

A trustee in a trust deed stands in the same position, with respect to notice, either actual or constructive, as a mortgagee or purchaser. *Kesner* v. *Trigg*, 98 U. S. 16; *New Orleans C. & B. Co.* v. *Montgomery*, 95 id. 16; 1 Jones on Mortgages, (2d ed.) sec. 458; *Peters* v. *Bain*, 133 U. S. 696.

If the trustee takes the title with notice of its infirmity he takes it subject to all the rights of the defrauded party. *Insurance Co.* v. *Eldredge*, 102 U. S. 545; *Insurance Co.* v. *Railroad Co.* 9 S. E. Rep. 180; *Peters* v. *Bain*, 133 U. S. 696; *Myers* v. *Ross*, 3 Head, 59.

WILLIAM W. CASE, for appellee:

A purchaser cannot be charged with notice of merely a part of the record, but only with the state of facts shown by the whole record. *Ely* v. *Scofield*, 35 Barb. 330; *Swartz's Exrs.* v. *Leist*, 13 Ohio St. 419.

A release deed, though fraudulent, conveys the legal title. *Dawson* v. *Hayden*, 67 Ill. 52; *Wilson* v. *South Park Comrs.* 70 id. 46; *Koester* v. *Burke*, 81 id. 436; *Walton* v. *Follansbee*, 131 id. 147; *Taylor* v. *King*, 6 Munf. 358; *Canoy* v. *Troutman*, 7·Ired. 155; *Barstow* v. *Stone*, 52 Pac. Rep. 48; *Williams* v. *Jackson*, 107 U. S. 478.

The one who has the best right to the legal title will not be deprived of his advantage by a court of equity. 2 Pomeroy's Eq. Jur. sec. 712; *Wilkes* v. *Bodington*, 2 Vern. 599; *Williams* v. *Jackson*, 107 U. S. 478; *Pomfret* v. *Windsor*, 2 Ves. Sr. 486; *Evans Bros.* v. *Bank*, 95 Va. 294; *Bowen* v. *Evans*, 1 J. & LaT. 265.

A purchaser who has acquired an equitable title or estate can successfully defend his title against one who has a mere equity to set aside a conveyance for fraud or mistake. As against such purchaser a court of chancery will decline to grant affirmative relief. 2 Pomeroy's Eq. Jur. secs. 742, 775; *Phillips* v. *Phillips*, 4 DeG., F. & J. 208; *Knobloch* v. *Mueller*, 123 Ill. 568.

An innocent purchaser of mortgage notes, although taking but an equitable title to the mortgage, takes title free from all undisclosed equities of strangers. *Humble* v. *Curtis*, 160 Ill. 193; *Silverman* v. *Bullock*, 98 id. 11; *Murry* v. *Sylburn*, 2 Johns. Ch. 441; *Himrod* v. *Gilman*, 147 Ill. 293.

An assignee of mortgage notes, as against a subsequent purchaser, must record his assignment. *McCormick* v. *Bauer*, 122 Ill. 573; *Edgerton* v. *Young*, 43 id. 464; *Ogle* v. *Turpin*, 102 id. 148; *Howard* v. *Ross*, 5 Ill. App. 456; *Towner* v. *McClelland*, 110 Ill. 542; *Williams* v. *Jackson*, 107 U. S. 478; *Bank* v. *Anderson*, 14 Iowa, 544; *Burt* v. *Paper Co.* 86 Ill. 66; *McClure* v. *Burris*, 16 Iowa, 591; *Bowling* v. *Cook*, 39 id. 200; *Cornog* v. *Fuller*, 30 id. 212.

There is no difference in this respect between a mortgage and a trust deed. *Williams* v. *Jackson*, 107 U. S. 478; *McAuliffe* v. *Reuter*, 166 Ill. 491; *Buehler* v. *McCormick*, 169 id. 269.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Appellant filed his bill in the superior court of Cook county to foreclose a mortgage, in the form of a trust deed, against certain real estate in Chicago. Amelia Thomas, and James, her husband, owners of. the property, who executed the trust deed; Theodore H. Schintz, the trustee named in the deed; and appellee, Jummel, claiming under another trust deed on the same property, were made parties defendant. The Thomases and Jummel filed separate answers, and each filed a cross-bill, the former seeking to enjoin the collection of judgments taken by confession on the notes secured by the Mann mortgage, and the latter praying that his trust deed be declared the first lien. On the hearing a decree was rendered granting the relief prayed in the original bill, giving Jummel a second lien and dismissing the cross-bill of the Thomases. From that decree Jummel alone appealed to the Appellate Court, where the decree below was reversed and the cause remanded, with directions to enter a decree giving Jummel the first and Mann a second lien on the premises. From that judgment this appeal is prosecuted.

The sole contention between the present parties is which shall have the prior lien. They do not disagree as to the material facts, but each insists that under the law applicable to those facts his is the prior security.

As early as September 30, 1886, Mrs. Thomas and her husband conveyed the property described, to Schintz, as trustee, to secure their own principal note for $4000, payable five years after date, to their order, with six and a half per cent per annum interest, payable semi-annually, for which they made ten coupon notes, also payable to

their order.  Both principal and interest notes were payable at the office of Schintz, the trustee.   The deed provided:  "When said notes and all expenses shall be fully paid, said grantee or his successor in trust shall re-convey all of said premises remaining unsold to the said grantors or their heirs or assigns, upon receiving his reasonable charges therefor."  By their endorsement they transferred all these notes to one John Lobstein.   On the maturity of the principal note, September 30, 1891, it was extended, in writing, to September 30, 1896, upon the payment of ten new interest notes, due semi-annually, each for $130. At the date of the extension Schintz took up the principal note, and on October 12, thereafter, sold it and the new interest notes to appellant, Mann.   The trust deed had been filed for record October 5, 1886, and duly recorded, but no change or addition was ever made to that record showing the assignment to Lobstein, Schintz or Mann, or the extension of the payment of the notes.

About a month before the maturity of the $4000 note as extended, Mrs. Thomas applied to Schintz for a further extension, and was informed by him that the holder wanted the money, but another party would take the loan upon her and her husband executing new papers, and that he, Schintz, would use the proceeds of the new loan to pay off the old one.   Pursuant to that arrangement she and her husband made new notes and a trust deed to Schintz, in all respects like the first, endorsing the notes in blank, and delivering them, with the deed, to Schintz.   This trust deed was acknowledged September 14, 1896, and recorded the following day.  It is shown by their own testimony, that at the time of the delivery of the new notes and deed to Schintz he told them he would get the old deed released, and they paid him $3.10 for the release and the recording.

As already stated, the $4000 note held by Mann, as extended, fell due September 30, 1896.  A few days before that date Schintz told Mann that the Thomases

wanted the loan extended for a year, and asked him if he was satisfied with that arrangement, and he said he was, and left, supposing such an extension would be made. A few days later he called again at the office of Schintz and received from him a check for $130 in payment of the last interest note held by him, but did not receive any extension agreement or new interest notes, and retained the principal note without any change, relying only on the statement that the Thomases wanted the time extended. He gave no further attention to the matter until about April 1, 1897, when he called on Schintz and again received his check for $130, which would have been six months' interest due if the loan had been extended.

On October 6, 1896, Schintz executed and acknowledged a release deed, by which he conveyed, remised, released and quit-claimed to Amelia and James S. Thomas all right, title or interest acquired by him under the trust deed dated September, 1886. This release was filed for record on the day of the date, endorsed "Box 519," which was a box in the recorder's office rented by Schintz, in which papers were placed to be returned to Schintz. It never came to the hands of the Thomases. After recording this release, on October 14, 1896, Schintz sold the new notes and security to appellee, Jummel, for $4025.25, —the amount of the $4000 principal note and accrued interest. When the first interest of the notes fell due, March 9, 1897, Schintz falsely stated it had not come in yet, but the day following sent Jummel his check for the amount. He failed to apply the proceeds of the sale of the second notes and security upon the first, as he had agreed to do, but appropriated the same to his own use. In July, 1897, his financial worthlessness and rascality became known, and the question then arose between these parties who should become his victim. Both had trusted him implicitly in their purchases, and relied upon his statements as to the security bought being a first

lien upon the mortgaged property, neither requiring or obtaining an abstract of title nor an examination of the records. The Thomases were equally confiding, with the result that a double encumbrance exists on their property for a single debt. Their interest, however, in the matter, is not here involved, they having abided by the decree below. The property is inadequate security for both debts described in the trust deeds, and hence it is all-important to these parties as to which shall have priority of lien.

The real issue in the case is whether the release of the first trust deed is binding on appellant, as between himself and appellee. It is first insisted that it is invalid for want of delivery by Schintz to the Thomases. That there was no manual delivery of the instrument is conceded, but there can be no doubt that it was made and recorded in pursuance of an agreement that Schintz should execute and record it. Mrs. Thomas testified: "Schintz told me he would get the old trust deed released; that I had nothing to do; if I just paid the money he would get it released himself; that is what he told me, and I paid the money for the release; he charged me for the recording; the new mortgage and release deed were to be recorded." To say, in the face of this evidence, (and there is none to the contrary,) that it was not the intention of the parties that the release should take effect from and after its execution and recording would be idle. Speaking of the effect of acknowledgment and recording of deeds as the equivalent of delivery, we said in *Weber* v. *Christen*, 121 Ill. 91: "We think, however, that the crucial test in all cases is the intent with which the act or acts relied on as the equivalent or substitute for actual delivery were done. * * * It is also true, as a general proposition, where nothing appears to show a contrary intention, that if the owner of an estate makes a conveyance of it and places the deed upon record without the knowledge of the grantee, the title will

nevertheless pass, if the latter, on being informed of the transaction, assents to it." Much stronger is the case where, as here, the grantee is not only previously informed that the deed is to be made and recorded, but contracts for and pays the expenses of the same. There is no merit in this point.

The substantial question in the case is whether Schintz, holding the legal title in trust for the benefit of the owner of the notes secured by it, had the power, without the consent of the holder of those notes, as against the owner of the second indebtedness, to make the release of the first trust deed. From the foregoing statement the following state of the record at the time the release was executed is shown: The first trust deed was recorded October 5, 1886, showing no one interested in it, or the indebtedness secured by it, except Schintz and the Thomases, and the debt past due more than five years. The release was unquestionably good against the Thomases, and we are unable to see why Jummel, the purchaser for value of the second notes and security, without any notice whatever, should not be protected. Mann's lien was a secret one. On principle the case is like that of *Williams* v. *Jackson*, 107 U. S. 478: "By a trust deed duly recorded land was conveyed to trustees in fee, and they were authorized to release it to the grantor upon payment of the negotiable promissory note thereby secured. Before that note was paid or payable, and after it had been negotiated to an endorsee in good faith for full value, a deed of release, reciting that it had been paid, was made to the grantor by the trustees and by the payee of the note, and recorded; and the grantor executed and recorded a like trust deed to secure the payment of a new note for money lent to him by another person, who had no actual notice that the first note had been negotiated and was unpaid, and who required and was furnished with a conveyancer's abstract of title, showing that the three deeds were recorded and the land free from encumbrance,

before he would make the loan: *Held*, that the legal title
was in the trustee under the second trust deed, and that
the note thereby secured was entitled to priority of pay-
ment out of the land." The court said: "The first deed
of trust from Sweet and wife did not give the trustees
merely a power to release the land on payment of the
notes secured thereby and to sell on default of payment,
but it vested the legal title in them. A release of the
land before payment of the notes would be a breach of
their trust, and would be unavailing in equity to any one
who had knowledge of that breach. (*Insurance Co.* v.
*Eldridge*, 102 U. S. 545.) But it would pass the legal title.
(*Taylor* v. *King*, 6 Munf. 358; *Den* v. *Troutman*, 7 Ired. 155.)
The legal title in the land being in the trustees under
the first deed of trust, passed by their deed of release to
Mrs. Sweet, and from her by the second deed of trust to
the trustees for Williams. The first deed of trust having
been made to the trustees therein named, for the benefit
of Augustus Davis, and to secure the payment of the
notes from the grantors to him, and the plaintiffs, upon
the transfer and endorsement to them of those notes,
having taken no precaution to obtain and put on record
an assignment of his rights in such form as would be no-
tice to all the world, the recorded deed of release exe-
cuted by him as well as by the trustees, reciting that the
notes had been paid and conveying the legal title, bound
the plaintiffs, as well as himself, in favor of any one act-
ing upon the faith of the record and ignorant of the real
state of facts." See *Ogle* v. *Turpin*, 102 Ill. 148; *McCormick*
v. *Bauer*, 122 id. 573.

Not only did the record fail to show that any third
party claimed any lien upon the property when the sec-
ond mortgage was purchased by Jummel, but from the
recitals in the deed the indebtedness was past due more
than five years when the release was executed and re-
corded. A trustee in deeds of trust of this kind has the
power to release the lien so as to re-vest the legal title in

the grantor, even though he does so without the consent
of the *cestui que trust,* and in violation of the obligations
of his trust. (*Walton* v. *Follansbee,* 131 Ill. 147, and cases
cited.) In equity, however, a release unauthorized by the
terms of the trust or by the *cestui que trust* will have no
effect upon the deed of trust, as between the original par-
ties or as to subsequent purchasers with notice. (*Barbour*
v. *Scottish-American Mortgage Co.* 102 Ill. 121; *Stiger* v. *Bent,*
111 id. 328; *Insurance Co.* v. *Eldridge,* 102 U. S. 545; *Williams*
v. *Jackson, supra.*) And we think the law is, that when
the record shows that the release was executed after the
indebtedness was past due, in the absence of all evidence
of notice to the subsequent purchaser he will be protected.
In fact, counsel for appellant concede this to be the law
if it appears that the purchaser acts upon the presump-
tion of payment. They say: "As the presumption of law
is against wrongdoing, a release deed would be *prima facie*
evidence of payment of the debt if made after maturity,
and a person would be justified in relying on it as such.
Now, Schintz did, in fact, represent the trust deed paid
by such a release, but appellee did not rely on that rep-
resentation."

It must, we think, be also conceded in this case, if ap-
pellee had examined the record or procured an abstract
of it, and acted upon what it showed, he would have been
fully justified in acting upon the validity of the release,
as against any holder of the old indebtedness, upon the
presumption of payment, arising from the fact that it was
long past due. Appellant is therefore driven to the posi-
tion that appellee is not entitled to the protection which
the record would have afforded him, because, he says:
"He relied wholly on the legal opinion of his vendor.
The statement of Schintz to Jummel that the second
security was a good first mortgage was not merely the
statement of a legal opinion, but of a fact. Jummel's
inquiry was whether it was a first mortgage, and Schintz
answered it was. In other words, he answered just what,

as a matter of fact, the record showed." Suppose this conversation had not taken place at all, but Jummel had made his purchase upon the assumption that he was getting a first lien; would it have been pretended, in the face of the Recording act, that he would not have been protected, because, forsooth, he did not examine and rely upon the record? It is said he did not rely upon the release; but he did rely upon the mortgage he was about to buy as a first lien, and he therefore relied upon, and had a right to rely upon, everything of record which would protect him in that right.

We cannot regard these parties as equally innocent, as a matter of law. True, both acted honestly and confided in Schintz. Neither had a bad motive in anything he did or attempted to do, but Mann, by failing to record the assignment to himself, and by allowing the indebtedness due him to remain of record as being long past due, and failing to record the first extension agreement, was negligent of his own rights and must suffer the consequences.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*