### In re BUCHNER.

### ILLINOIS NAT. BANK et al. v. SUMMERS et al.

(Circuit Court of Appeals, Seventh Circuit. April 15, 1913.)

No. 1,960.

1. MORTGAGES (§ 151*)—PRIORITY—ASSIGNMENT—RELEASE—NOTICE OF ASSIGNMENT.

A bankrupt conveyed real property to F., receiving back a mortgage to secure notes for part ·of the purchase price. On the same day F. reconveyed the property to the bankrupt subject to the mortgage which the bankrupt assumed. The first deed and mortgage were recorded, but the second was not. After this the bankrupt borrowed from a bank and deposited the notes and mortgage as collateral, the bank procuring no assignment of the mortgage, after which the bankrupt, needing more money, procured F. to apply to a trust company for a loan on the same property; . the bankrupt releasing the first mortgage without paying the debt for which it was pledged, and F. executed a new mortgage to the trust company for the new loan; that company having no notice of the . pledge of the original mortgage. *Held*, that the bankrupt not having been named as trustee in the original mortgage properly released it individually, and that the trust company was not negligent in accepting such release as a satisfaction of the lien without requiring an inspection of the

notes secured, though they were not due and contained no prepayment privileges.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 307, 309–311, 314–329, 332–336; Dec. Dig. § 151;* Vendor and Purchaser, Cent. Dig. § 670.]

2. MORTGAGES (§ 167*)—ASSIGNMENT OF FIRST MORTGAGE—NOTICE.·

A bankrupt conveyed certain property to F., receiving back a mortgage and notes for part of the purchase price and a reconveyance by which the bankrupt assumed payment of the mortgage. He recorded the mortgage but not the reconveyance and later pledged the mortgage and notes with the I. Bank as security for a loan. The bankrupt deposited the unrecorded deed with the F. Bank to protect F. against liability on the mortgage, after which the notes and first mortgage were sent by the I. Bank to the F. Bank for collection. The bankrupt later procured F. to apply to a trust company for a new loan on the same property and procured the same by releasing the first mortgage and having F. execute a new one to the trust company, which sent the proceeds of the loan to the F. Bank as the trust company's agent with directions on receiving a satisfaction of the first mortgage to deliver to F., the proceeds of the new loan and to forward the papers to the trust company, which was done. *Held*, that the officer of the F. Bank, having charge of the completion of the trust company's loan, having been directed to perform merely ministerial duties, and not being required to pass on the legality of the transaction or to express any opinion as to the adequacy of the security, the presence or absence of other liens, etc., his knowledge, if any, that the notes secured by the first mortgage had not been paid and had not been assigned, was not chargeable to the trust company.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 382, 390, 391; Dec. Dig. § 167.*]

3. JUDGMENT (§ 788*)—LIEN—STATE OF TITLE—NOTICE—POSSESSION.

Where a bankrupt was in possession of land under an unrecorded deed at the time certain judgments were recovered against him, such judgments were prior to the rights of the purchaser of the land under a contract of sale filed three days after the entry of the judgments, under the rule that a judgment creditor is presumed to have advanced credit on the apparent state of the title as disclosed by the records and open possession of the property as of the date of the recovery of his judgment and is a bona fide purchaser as of that date.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1368, 1369; Dec. Dig. § 788.*]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; A. L. Sanborn, Judge.

In the matter of Louis A. Buchner, bankrupt. From a decree (202 Fed. 979) confirming the report and findings of the Referee in Bankruptcy establishing priorities in favor of Sangamon Loan & Trust Company, D. C. Gallagher, and George White as against the Illinois National Bank and State Trust & Savings Bank of Peoria, they appeal. Affirmed.

Frank T. Miller, John M. Elliott, and W. L. Ellwood, all of Peoria, Ill., and A. M. Fitzgerald, of Springfield, Ill., for appellants.

John A. Barber and Clayton J. Barber, both of Springfield, Ill., and C. E. Smith, of Lincoln, Ill., for trustee.

Logan Hay and John T. Creighton, both of Springfield, Ill., for appellee Sangamon Loan & Trust Co.

T. T. Beach and Harold F. Trapp, both of Lincoln, Ill., for appellees White & Gallagher.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Before BAKER and KOHLSAAT, Circuit Judges, and GEIGER, District Judge.

KOHLSAAT, Circuit Judge. This is an appeal from a decree entered August 29, 1912, by which the District Court confirms the report and findings of its referee in bankruptcy establishing certain priorities among claims against the bankrupt estate.

Appellants, Illinois National Bank and State Trust & Savings Bank of Peoria (hereinafter referred to as the "Peoria banks"), are the holders respectively of certain notes secured by mortgage on real estate of the bankrupt. They assign error upon the action of the court in postponing their claims under said mortgage notes to (1) certain notes secured by a later mortgage on the same real estate held by appellee Sangamon Loan & Trust Company; (2) a claim of appellees Gallagher & White for money advanced on a contract of purchase of the same real estate; (3) certain claims of appellee Summers, trustee, subrogated to the lien of judgment creditors.

Louis A. Buchner, the bankrupt, was president, and Paul D. Foster was one of the directors, of the Farmers' State Bank of Middletown. Both were deeply involved financially in the affairs of the Middletown Coal Company, which appears to have been a losing venture. Buchner was the owner in fee simple, unincumbered, of the real estate above referred to (designated in the record as tracts 1, 2, 3, and 4). He needed money for coal mining operations, but did not want to injure his credit or that of his bank by having it known that he was mortgaging his property. Accordingly, he conveyed the real estate (tracts 1, 2, 3, and 4) to Foster by warranty deed. Foster thereupon executed a mortgage back to Buchner to secure notes aggregating $15,000 signed by Foster, made payable to the order of "myself," and by Foster indorsed in blank. This mortgage and notes, having been duly delivered to Buchner, were shortly thereafter placed with appellants, Peoria banks, as collateral to certain indebtedness owing by Buchner to said banks respectively, and are the notes upon which the Peoria banks now base their several claims.

Both warranty deed and mortgage were duly recorded; but no formal assignment of the mortgage from Buchner to Peoria banks was ever made, and Buchner remained as mortgagee of record until other rights had intervened. Afterwards, but as part of the same transaction, Foster executed and delivered to Buchner a general warranty deed of the same premises, subject, however, to the mortgage. This last warranty deed was not recorded, but through an understanding between the parties was, some six months thereafter, deposited with V. J. Ryan, cashier of the bank of which Buchner and Foster were respectively president and director (the Farmers' State Bank of Middletown), with a memorandum attached certifying that it was so deposited to protect Foster against any loss by reason of said mortgage notes. Buchner remained, either by himself or by his tenants, in possession of the premises up to the time of bankruptcy.

A little over a year after the above-described notes had been negotiated, more money being needed, Buchner procured Foster to apply

to the appellee Sangamon Loan & Trust Company for a loan of $8,000 on the same real estate (tracts 1, 2, 3, and 4).

The original application for this second loan is in Buchner's handwriting, but the affidavit attached thereto is sworn to by Foster. In this application, Foster untruthfully states that he (Foster) was in possession of the said real estate: and afterwards, in an application on another form, that there was no mortgage or other liens on said real estate. Following the usual course in such cases, the lender asked for an abstract of title, an examination of which disclosed the $15,000 prior mortgage still outstanding. In the course of negotiations that followed, Foster agreed to get a release of this prior mortgage, whereupon the Sangamon Loan & Trust Company promised to lend the money, and forwarded the same to the Farmers' State Bank of Middletown (Buchner's bank) with instructions that it was "to be delivered to Mr. Foster, upon his delivery to you of the notes and mortgage which he has executed; and also the delivery to you of the release of the mortgage of $15,000 to Mr. Buchner." These instructions were complied with by the Farmers' State Bank, and the loan made; both release and mortgage being thereafter duly recorded. The release was signed by Buchner individually—not as trustee.

At this time, the outstanding notes of the prior mortgage had something like 2½ years to run. They contained no prepayment privileges. The Sangamon Loan & Trust Company did not insist upon seeing the canceled notes, seemingly assuming that the release would not have been made unless the notes were paid. It had no actual notice that the notes had not been paid.

V. J. Ryan, cashier of the Farmers' State Bank, at the time of the release, had in his possession the unrecorded deed from Foster back to Buchner, and but a few days previous to the execution of the release certain of the notes secured by the first Peoria mortgage which were owned and had been forwarded by the Illinois National Bank of Peoria, at Buchner's request, to allow inspection by a possible purchaser. It was Ryan who took Buchner's acknowledgment to the release deed.

Appellants, Peoria banks, do not question the want of actual notice or impugn the good faith of the Sangamon Loan & Trust Company; but they assert that (1) Foster's misrepresentations as to absence of incumbrance, (2) the fact that the records showed that the notes had 2½ years to run and contained no prepayment privileges, (3) the circumstances that the release was signed by Buchner individually instead of as trustee, (4) the insufficiency of the $8,000 loan asked for to satisfy one of $15,000—should have aroused suspicion in the minds of those representing the Sangamon Loan & Trust Company, and should have called for a more rigid inquiry; and that failing to entertain suspicion and to follow up these circumstances by a more careful investigation (and, perhaps, insistence that the canceled notes of the prior mortgage be produced) the Sangamon Loan & Trust Company has been guilty of negligence which should invalidate whatever priority it might otherwise have had and allow the $15,000 prior mortgage to stand as a first lien.

It is also contended on behalf of appellants that the Sangamon Loan & Trust Company is chargeable with the knowledge of its agent, the Farmers' State Bank of Middletown, as to the existence of the outstanding notes and the rights of their holders.

[1] On the other hand, appellee Sangamon Loan & Trust Company urges that the appellants, Peoria banks, were guilty of negligence in not taking and recording an assignment of their mortgage, which would have afforded notice of record of their rights, insisting that it (Sangamon Loan & Trust Company) had done everything that could reasonably be expected of it, and that, having the express statement of Foster and the release of Buchner, it was not required to pursue its inquiry further; and that knowledge possessed by the officers of the Farmers' State Bank of Middletown should not be imputed to it, because of the antagonistic relation of that bank to the subject-matter of its agency.

The Sangamon Loan & Trust Company knew the men with whom it was dealing to be (as practical business men engaged in the banking business) necessarily familiar with the general procedure on the application for a loan on real estate. No one with the least knowledge of such procedure would expect to deceive a lender by a statement that there was no prior mortgage on the property when such a mortgage had been recorded and showed, unreleased, on the abstract. Under these circumstances, the only logical inference to be drawn by the Sangamon Loan & Trust Company from Foster's misrepresentation as to the absence of incumbrances was that Foster had made a careless statement or was honestly mistaken in supposing that the prior mortgage had been released. The obvious futility of such a misrepresentation as an instrument of fraud was sufficient reason to regard it merely as a mistake, and not as an indication of dishonesty.

It is not unusual that notes should be taken up before maturity. While the notes contained no prepayment privileges, the right to refuse to accept payment before maturity was one that could be, and often is, waived.

There was no reason why Buchner should have written the word "trustee" after his signature. He was not named as trustee in the instrument; it was a mortgage, not a trust deed, and as mortgagee he properly released it individually.

Men in business often find it desirable, for various legitimate reasons, to put their liabilities in different form; and there seems to be nothing suspicious in the fact that only $8,000 was asked for—the natural inference would be that Foster had taken care of the other $7,000 in some other way.

It is not believed that any or all of these circumstances should reasonably have aroused suspicion that a fraudulent release was contemplated.

While there can be no question that failure to demand inspection of the canceled notes is not the usual practice of a careful business man, the fact that both Buchner and Foster, mortgagor and mortgagee (known to be officials of the Farmers' State Bank), joined in expressly or tacitly asserting absence of other incumbrance, might well throw

the Sangamon bank off its guard. Even if the Sangamon Loan & Trust Company had demanded inspection of the canceled notes, it is improbable that, having proceeded thus far with the fraud, either Buchner or Foster would have confessed that the notes were outstanding and unpaid. Suppose that Buchner and Foster, in response to strict inquiry of the officials of the Sangamon Company, had expressly asserted that the notes had been paid and canceled, but were subsequently lost or destroyed? The Sangamon Loan & Trust Company might have demanded the security of a bond conditioned to save them harmless in the event of the notes afterward turning up unpaid in the hands of a bona fide holder for value without notice. But how could such additional diligence affect the question before the court? How could it in any way protect the interests of the Peoria banks?

In Williams v. Jackson, 107 U. S. 478, 2 Sup. Ct. 814, 27 L. Ed. 529, where, like in the case at bar, a trustee wrongfully released mortgaged premises before notes were paid, the court said that the lender had taken "every reasonable precaution that could have been expected of a prudent man" when "he declined to lend his money, until after he had been furnished with a conveyancer's abstract of title, showing that the deed of release from the trustees under the first deed of trust and from the original holder of the notes secured thereby * * * had been recorded, and that the land was not subject to any incumbrance prior to the second deed of trust." (This was exactly what the Sangamon Loan & Trust Company did in the case at bar.) The court further said:

"It was suggested in argument that as the first deed of trust showed that the notes secured thereby were negotiable and were not yet payable, and that the land was not entitled to be released from this trust deed until all the notes were paid, Williams was negligent in not making further inquiry into the fact whether they were still unpaid. But of whom should he have made inquiry? The trustee under the first deed and the original holder of the notes secured thereby, having expressly asserted under their own hands and seals that the notes had been paid, and Sweet and wife having apparently concurred in the assertion by accepting the deed of release and putting it on record, he certainly was not bound to inquire of any of them as to the truth of that fact; *and there was no other person to whom he could apply for information, for he did not know that the notes had ever been negotiated and had no reason to suppose that they had not been canceled and destroyed.*

"To charge Williams with constructive notice of the fact that the notes had not been paid, in the absence of any proof of knowledge, fraud, or gross or willful negligence, on his part, would be inconsistent with the purpose of the registry laws, with the settled principles of equity, and with the convenient transaction of business. Hine v. Dodd, 2 Atk. 275; Jones v. Smith, 1 Hare, 43, 1 Phillips, 244; Agra Bank v. Barry, Irish R. Eq. 128, Law Rep. 7 H. L. 135; Wilson v. Wall, 6 Wall. 83 [18 L. Ed. 727]; Norman v. Towne, 130 Mass. 52."

This language of the court in Williams v. Jackson, supra, is quoted approvingly in Havighorst v. Bowen, 214 Ill. 97, 73 N. E. 402, and there can be no doubt that by the great weight of authority this is the law in the state of Illinois. Thus in Vogel v. Troy, 232 Ill. 481, 83 N. E. 960, the court says:

"The law is well settled in this state that the trustee in a trust deed of the character of the one in question has the power, as to third parties, to release the lien created thereby so as to revest the title in the grantor, even

though he does so without the consent of the holder of the indebtedness which the trust deed was given to secure and in violation of the obligations of his trust (Mann v. Jummel, 183 Ill. 523 [56 N. E. 161]); and such release may be made even though the indebtedness secured by the trust deed is not due at the time the release is executed (Ogle v. Turpin, 102 Ill. 148). In equity, however, a release unauthorized by the terms of the trust deed or by the consent of the cestui que trust will have no effect upon the trust deed as between the original parties or as to subsequent purchasers with notice."

The court also in this case (Vogel v. Troy) reiterates the language in Lennartz v. Quilty, 191 Ill. 174, 60 N. E. 913, 85 Am. St. Rep. 260:

"The recording laws are designed to afford protection to parties acting in good faith and relying upon them, and, in the absence of any notice or ground of suspicion, it is not the duty of a purchaser to obtain an admission of payment from the holder of a note secured by a trust deed regularly released of record."

Appellants Peoria banks might have adequately protected themselves and given notice of their rights to subsequent purchasers by taking and recording an assignment of the mortgage. In Ogle v. Turpin, 102 Ill. 148, 153, the court say:

"The assignment of the notes operated as an equitable assignment of the mortgage, and the assignment was an instrument that related to or affected the title to land, and to become operative as to creditors and purchasers the assignment of the mortgage should have been formally made and recorded, to charge notice to all persons dealing with the title, or at least the assignment on the note * * * should have been recorded. As between the parties, the mere assignment, without recording, was all that was required to assign the mortgage, but as to strangers it was otherwise."

In the same case, Mr. Justice Dickey, in a concurring opinion, says:

"When a man buys notes secured by mortgage, he becomes thereby the equitable assignee of the mortgage, and acquires an equitable interest in the mortgaged lands. If he wishes to protect that interest against subsequent purchasers, he may do so by taking a written assignment of the mortgage and placing that assignment upon record. Possibly a record of the assignment of the note would be sufficient."

See, also, Mann v. Jummel, 183 Ill. 523, 56 N. E. 161; Day v. Brenton, 102 Iowa, 483, 71 N. W. 538, 63 Am. St. Rep. 460; Merrill v. Luce, 6 S. D. 354, 61 N. W. 43, 55 Am. St. Rep. 844.

[2] The argument that the Sangamon Loan & Trust Company should be charged with any knowledge possessed by the Farmers' State Bank that the notes of the first mortgage were outstanding and unpaid is untenable. In the first place, it is not sufficiently shown that Ryan had actual knowledge of the facts sought to be brought home to him. Over two years had elapsed between the making of the first mortgage and the application for the second. The notes had long been held by the Peoria banks, and their status may not have been borne in mind by Ryan when he promised to follow out the direction of the Sangamon Loan & Trust Company.

But even if we overlook the uncertainty of this evidence, and assume that Ryan had actual knowledge, it must be remembered that Ryan's authority from the Sangamon Loan & Trust Company was to perform duties purely ministerial, being closely limited to (1) receiving certain papers; (2) delivering to Mr. Foster a check; (3) forwarding the pa-

pers to his principal. He had no discretionary duties—was not required to pass upon the legality of the transactions nor to express his opinion as to the adequacy of the security, the presence or absence of liens, nor anything that would have brought out his knowledge (if he possessed any), relating to the rights of the Peoria banks. It is held in Lowden v. Wilson, 233 Ill. 344, 350, 84 N. E. 245, 249, that "notice, to bind the principal, must have reference to business in which the agent is engaged by the authority of the principal," and that, where an agent was employed to turn over a check when possession was given, the knowledge of the agent of an outstanding title could not be imputed to his principal.

Accordingly, we find no error in the finding and action of the District Court in awarding priority of the notes held by the Sangamon Loan & Trust Company over those held by the Peoria banks.

[3] The release signed by Buchner and the mortgage of Foster to the Sangamon Loan & Trust Company were filed for record in June, 1908. On February 3, 1911, four judgments and transcripts of judgments aggregating nearly $7,900 and costs were entered of record against Louis A. Buchner in the circuit court of Lake county where the land is located. Three days later, on February 6, 1911, Buchner entered into a contract in writing, which was filed for record on the same day, agreeing to sell the same land to appellants Gallagher & White, who deposited $1,000 on the purchase price. The four judgments against Buchner were obtained before the contract with Gallagher & White. Section 1 of chapter 77 of the Illinois Revised Statutes (1911) would seem clearly to require the claim of Gallagher & White to be held subordinate to these prior judgments. While Buchner's warranty deed from Foster was unrecorded, Buchner was in possession of the land, and the law is clear that the possession of a judgment debtor is notice of his interest equal to a public record of the instrument under which he holds. A judgment creditor is conclusively presumed to have advanced credit on the apparent state of the title as disclosed by the records and open possession of the property as of the date of the recovery of his judgment, and he is a bona fide purchaser as of that date. Manly v. Pettee, 38 Ill. 128, 135; Martin v. Dryden, 1 Gilm. (6 Ill.) 215; Massey v. Westcott, 40 Ill. 160, 163; Gary v. Newton, 201 Ill. 170, 186, 66 N. E. 267.

It follows that there is no error in holding the vendee's lien of Gallagher & White subordinate to the four judgments entered of record February 3, 1911, for $7,885.86 and costs. On February 8, 1911 (two days after the record of the Gallagher & White contract), two judgments aggregating $8,103.46 were entered of record against Buchner. At the time of their entry, the judgment creditors had no notice of record or otherwise of the claim of the Peoria banks. It follows, upon principles above set forth, that these judgments are entitled to priority over the mortgage notes of the Peoria banks; and we find no error in the action of the court below in so holding.

The order of the District Court is in all respects affirmed.