C. P. A. COMPANY *v.* FIRST MORTGAGE BOND COMPANY, INC.

1. MORTGAGES—TRUST MORTGAGE—FORECLOSURE—PURCHASE BY COR-
PORATE TRUSTEE—SHERIFF'S CERTIFICATE.

    Since corporate trustee under a trust mortgage of realty, in buy-
    ing the property at foreclosure sale in its corporate capacity,
    would have to pay cash or surrender bonds secured by the
    mortgage equal to the price bid, its failure to do either rendered
    the purchase by it fraudulent and fictitious and sheriff's cer-
    tificate that he received the purchase price and paid same over
    to parties entitled thereto false.

2. SAME—DISCHARGE—NOTICE TO SUBSEQUENT MORTGAGEES.

    Subsequent mortgagees without notice may rely upon the evidence
    of discharge as shown by the record and a discharge is only
    conclusive as to those who purchase in good faith.

3. SAME—DISCHARGE—RECORDING—NOTICE.

    A discharge may be recorded and still the mortgage be not dis-
    charged and a subsequent mortgagee with notice of that fact
    will not be protected by the record.

4. SAME—DISCHARGE—NOTICE TO SUBSEQUENT MORTGAGEE.

    A discharge need not be recorded in order to protect a subsequent
    mortgagee if in fact the previous mortgage has been discharged
    and subsequent mortgagee relies upon notice of such fact.

5. SAME—TRUST MORTGAGES—RECORDING—DISCHARGE.

    The recording laws are designed to afford protection to parties
    acting in good faith and relying upon them, and in the absence
    of any notice or ground of suspicion it is not the duty of a
    purchaser to obtain an admission of payment from the holder
    of a note secured by a trust mortgage regularly discharged of
    record.

6. SAME — TRUST MORTGAGES — DISCHARGE — PRIORITY OF BOND-
HOLDERS.

    Holder of bonds secured by trust mortgage which trustee dis-
    charged of record and cancelled all bonds except those owned

(255)

by plaintiff *held*, entitled to share only equally with and not to have a priority over *bona fide* senior bondholders of trust mortgage thereafter executed.

WIEST, J., dissenting.

Appeal from Wayne; Miller (Guy A.), J.  Submitted October 6, 1938.  (Docket No. 58, Calendar No. 40,235.)  Decided February 2, 1939.

Bill by C. P. A. Company, a Michigan corporation, against First Mortgage Bond Company, Inc., a Virginia corporation, and others to establish a prior lien, for foreclosure of the lien, an accounting and other relief.  From decree rendered, plaintiff appeals.  Affirmed.

*Jos. B. Beckenstein* and *Thos. F. Chawke,* for plaintiff.

*Corliss, Leete & Moody,* for defendants.

POTTER, J.  Plaintiff, a stock insurance company, organized under the laws of Michigan, purchased $6,000, in par amount, of trust mortgage bonds of the First Mortgage Bond Company, Inc., secured by a first trust mortgage on Brooklawn apartments, corner of Brooklyn and Hancock avenues, in Detroit.  The trust mortgage securing the payment of these bonds was executed by Joseph Saxer and wife January 15, 1924.  In December, 1925, Saxer and wife conveyed the mortgaged property to Douglas M. Davis.  February 1, 1926, Douglas deeded the property to himself and William M. Stoker.  In this deed, Davis and Stoker assumed and agreed to pay the mortgage thereon.  January 16, 1928, Stoker resigned as a trustee under the trust mortgage, he

being a cotrustee with the First Mortgage Bond Company, Inc. July 2, 1928, Davis and Stoker and their respective wives deeded the property in question to Sam Borock. Unpaid taxes accumulated. In 1930, the trust mortgage was foreclosed by the trustee by advertisement and sale held June 12, 1930. The property was bid in by the trustee in its corporate capacity, and not as trustee, for the full amount due thereon, $40,670.01.

At this sale, the purchaser did not pay cash, it did not surrender outstanding bonds secured by the mortgage equal to the price bid. It could not legally buy the property without paying therefor either in cash or bonds. It paid nothing. The purchase by it was fraudulent and fictitious. The sheriff's certificate that he received the purchase price and paid the same over to the parties entitled thereto was false. The sheriff's deed was executed without any consideration, and one important question here is, whether this purported sale and distribution of the proceeds thereof and the sheriff's deed executed in pursuance of such sale, which are of record, are of any validity whatever as against plaintiff.

Apparently, the First Mortgage Bond Company, Inc., bid in the mortgaged property in its individual capacity to enable it to handle it more easily. August 29, 1930, Borock, who had become the purchaser thereof, made application to the Michigan securities commission to issue and sell $45,000 of first mortgage bonds to refinance an issue maturing January 15, 1931. September 2, 1930, Borock and wife executed a trust mortgage to the First Mortgage Bond Company, Inc., as trustee, in the sum of $45,000 to secure $40,000, in par amount, of senior bonds and $5,000, in par amount, of junior bonds.

The same day, September 2, 1930, a certificate of redemption from the Saxer mortgage was executed by the First Mortgage Bond Company, Inc., recorded November 13, 1930. This certificate of redemption recited that redemption from the foreclosure of the Saxer mortgage was effected through a new mortgage given by Sam Borock and Rebecca Borock, his wife, to the First Mortgage Bond Company, Inc., a Virginia corporation duly authorized to do business in the State of Michigan, as trustee. Borock did not redeem from the mortgage sale or the Saxer mortgage. The only thing he ever paid was $1,337.45 to apply on delinquent taxes upon the property. December 11, 1930, the Michigan securities commission authorized the issuance of the new bonds in the amount of $45,000 as above mentioned. $40,000 of senior bonds were offered for sale by the First Mortgage Bond Company, Inc. No mention is made in the advertisement of the First Mortgage Bond Company, Inc., of the $5,000 in junior bonds.

The First Mortgage Bond Company, Inc., became financially involved and the court took over the administration of the several trusts. The Borock mortgage was foreclosed and the property bid in for the First Mortgage Bond Company, Inc., as trustee. All the other Saxer bonds, secured by the Saxer mortgage upon the property, were discharged. Plaintiff's bonds were not discharged and in this suit plaintiff seeks to establish a lien for the amount of the bonds held by it, and interest, upon the property involved prior and superior to the lien or rights of any person or persons other than themselves under the original trust mortgage; that the court decree a foreclosure of plaintiff's lien in accordance with the practice in this State on the foreclosure of equitable liens;

that if the court finds that plaintiff does not have a prior and superior lien upon the premises, the court decree plaintiff to be the owner of an undivided interest in and to the premises by reason of the foreclosure of the original trust mortgage, and that the premises be partitioned in accordance with the statutes of this State; that defendants, and each of them, come to a full and true accounting of their trusteeship, and that they be held liable for any and all damages to plaintiff by reason of their gross and repeated breaches of trust, negligence and misconduct; and for other relief.

The trial court in its opinion found the sale of the property under the foreclosure of the Saxer mortgage was irregular and unauthorized; that the First Mortgage Bond Company, Inc., had the right to bid and purchase but only for cash or for bonds turned in for cancellation; that no cash was paid and no bonds turned in for cancellation; that the only thing that happened was, the First Mortgage Bond Company, Inc., bid the full amount of the outstanding bonds, with interest and charges, and took a sheriff's deed; that no consideration passed for the execution and recording of the certificate of redemption; that plaintiff's bonds are still a first lien upon the property, but that the purchasers of the bonds authorized by the second mortgage were purchasers in good faith; that plaintiff was entitled to relief and it was given an option as to the form thereof,—*first,* it was given a lien upon the property for 6/48 of the title, being thus placed on a parity with the lien or right therein of the Borock bondholders; *second,* it was entitled, at its election, to the rights represented by $6,000 of the Borock bonds held in escrow; *third,* at its option, it might take a personal decree against the First Mortgage Bond Company, Inc., for the re-

covery of its damages by reason of the unjustified and irregular foreclosure of the Saxer mortgage, the damages to be recovered to be a 6/40 interest in the property, less 6/40 of the expenses incurred, including interest and taxes paid in connection with the mortgage foreclosure. The value of the property was fixed at $33,000 and the trial court held the damages would have to be computed upon that basis. Plaintiff was given its election as to which of the three options indicated it would exercise as the basis of its relief. Plaintiff did not elect between the forms of relief authorized by the opinion of the trial court, whereupon a decree was entered fixing the aggregate mortgage principal, advances and expenses at the time of the foreclosure of the original Saxer mortgage at $41,300.35 and giving plaintiff an equitable, beneficial interest in said land in the proportion of $6,000 to said sum of $41,300.35. Plaintiff appeals.

The original Saxer mortgage, article 10, § 3, provided:

"The trustees shall be under no obligation to recognize any person, firm or corporation as holder or owner of any of the bonds secured hereby or to do or refrain from doing any act pursuant to the request of any person, firm or corporation professing to be or claiming to be such holder or owner until such supposed holder or owner shall produce the said bonds and deposit the same with the trustees or prove ownership thereof by evidence satisfactory to the trustees, but all powers and rights of action hereunder may be exercised by the trustees without the possession or production of any of said bonds or coupons or proof of ownership thereof. The trustees shall not be answerable for the default or misconduct of any agent or attorney employed by them in and about the execution of this trust, if such agent

or attorney shall have been selected with reasonable care; or for anything whatever in connection with this trust except wilful misconduct or gross negligence. The trustees shall not be personally liable for any debts contracted by them nor for damages to person or property incurred by them, nor for damages to persons or property of any kind whatsoever, or for salaries or nonfulfillment of contracts during any period within which they shall manage the trust, estate or premises upon entry. Neither trustee shall in any case be answerable for any act, omission or neglect of the other trustee."

Article 10, § 7, provided:

"That in all actions, suits or proceedings or dealings or transactions in any way affecting or relating to this indenture or to the premises or any part thereof or the title thereto, the trustees shall be deemed the representative of the bondholders and in no case shall it be necessary to satisfy any bondholder or to make any bondholder a party of any action, suit or proceeding for the purpose of binding or concluding him."

In *Moran* v. *Roberge*, 84 Mich. 600, it is said:

"Subsequent mortgagees without notice may rely upon the evidence of discharge as shown by the record. A discharge is only conclusive as to those who purchase in good faith. A discharge may be recorded, and still the mortgage be not discharged. A subsequent mortgagee with notice of that fact will not be protected by the record. It is not necessary that the discharge be recorded in order to protect a subsequent purchaser or mortgagee. When such an one receives reliable information, upon which he relies, that a mortgage has been discharged, he will be protected if it turns out that the mortgage was in fact discharged."

In *Pritchard* v. *Kalamazoo College,* 82 Mich. 587, a mortgage was executed to secure four instalments, one of which was assigned by the mortgagee who subsequently discharged the mortgage. It was held (syllabus):

"A landowner, after mortgaging his land, sold it, taking back a purchase-price mortgage, payable in four instalments, one of which he assigned. His grantee mortgaged the land to the *first* mortgagee, and then redeeded it to the grantor, who soon after executed a *new* mortgage to the *first* mortgagee in lieu of the two mortgages, which were discharged. At *this* time the assignment had not been recorded, and the *first* mortgagee had no notice of its existence, but the purchase-price mortgage was of record and undischarged. After the recording of the assign-- ment, the *first* mortgagee foreclosed the *new* mortgage, but did not make the assignee a party, who filed a bill to foreclose his interest under the assignment. And it is held that, by failing to record the assignment, the *new* mortgage took priority over the instalment assigned, but that, as the assignment was recorded before the commencement of the foreclosure suit, and the assignee was not made a party, his bill will be treated as a bill to redeem, which he will be allowed to do by paying the amount due the *first* mortgagee on the *new* mortgage, and a decree will be entered in his favor for the redemption money, and for the amount of his instalment, under which he may sell the land to satisfy said claims."

In *Bier* v. *Weiler,* 203 Ill. App. 144, it is said:

"The recording of a release made by persons appointed in a mortgage or trust deed to execute the release carries with it as to subsequent *bona fide* purchasers the legal inference that the released deed has been delivered. *Havighorst* v. *Bowen,* 214 Ill. 90 (73 N. E. 402). 'Whether the release was in fact

delivered to Bowen would seem to be not controlling as between the parties. It was made by the person pointed out in the trust deed to make it. It was placed of record, and under our recording act the fact that it was of record carried with it, as to appellees and innocent third parties, the legal inference that it was delivered. There is quite as much delivery of this deed as there could be of an entry of satisfaction on the margin of the record, and, as we have said, one is given the same legal effect as the other.' * * * (*)

" 'The law is well settled in this State that the trustee in a trust deed of the character of the one in question has the power, as to third parties, to release the lien created thereby so as to revest the title in the grantor, even though he does so without the consent of the holder of the indebtedness which the trust deed was given to secure and in violation of the obligations of his trust; * * * and such release may be made even though the indebtedness secured by the trust deed is not due at the time the release is executed.' "

A situation similar to that here involved was under consideration in *Porter* v. *Stuart* (C. C. A.), 227 Fed. 840, where it is said:

"The situation as between Porter and a subsequent mortgagee is such that one of these two innocent persons must suffer by the act of Sweatt in releasing the lots without having received the required payments on them. The conclusion is that in the circumstances disclosed it was Porter's conduct, and not any fault or lack of due diligence on the part of the subsequent mortgagees, that enabled Sweatt to occasion the loss. This being true, the loss must fall upon Porter."

"Under the Federal rule, knowledge of the trustee, in a case such as this, is not to be imputed to a *bona fide* holder for value of the note secured. The very point was decided by necessary implication in the case of *Williams* v. *Jackson* (107 U. S. 478 [2 Sup. Ct. 814]), where the trustee had knowledge of the wrongful character of the release of the prior deed

of trust, and it was held that the holder of the notes secured by the deed of trust to him was a holder without notice." *Ballard Bros. Fish Co.* v. *Stephenson,* 49 Fed. (2d) 581.

In *Simpson* v. *Stern,* 63 App. D. C. 161 (70 Fed. [2d] 765), it is said:

"The insurance company in good faith relied upon the title as it appeared of record, and paid over its money to the Swartzell Company by direction of Abner Drury Company as the owner and mortgagor of the property. It is entitled to be protected in its lien under the statutes relating to the registration of such instruments. This view is supported by controlling authorities."

In *Williams* v. *Jackson,* 107 U. S. 478 (2 Sup. Ct. 814), the trustee wrongfully released mortgaged premises before notes were paid. The court said the lender took every reasonable precaution that could have been expected of a prudent man when he declined to lend his money until after he had been furnished with an abstract of title showing the deed of release from the trustees under the first deed of trust and from the original holder of the notes secured thereby, had been recorded, and the land was not subject to any incumbrance prior to the second deed of trust. It was said:

"To charge Williams with constructive notice of the fact that the notes had not been paid, in the absence of any proof of knowledge, fraud or gross or wilful negligence, on his part, would be inconsistent with the purpose of the registry laws, with the settled principles of equity, and with the convenient transaction of business."

This language was approved in *Havighorst* v. *Bowen,* 214 Ill. 90 (73 N. E. 402), and *Vogel* v. *Troy,* 232 Ill. 481 (83 N. E. 960).

As pointed out in *Vogel* v. *Troy, supra,* quoting from *Lennartz* v. *Quilty,* 191 Ill. 174 (60 N. E. 913, 85 Am. St. Rep. 260):

"The recording laws are designed to afford protection to parties acting in good faith and relying upon them, and in the absence of any notice or ground of suspicion it is not the duty of a purchaser to obtain an admission of payment from the holder of a note secured by a trust deed regularly released of record."

Substantially similar holdings were made in *Mann* v. *Jummel,* 183 Ill. 523 (56 N. E. 161); *Day* v. *Brenton,* 102 Iowa, 482 (71 N. W. 538, 63 Am. St. Rep. 460); *Merrill* v. *Luce,* 6 S. D. 354 (61 N. W. 43, 55 Am. St. Rep. 844). While in *Griffin* v. *International Trust Co.,* 88 C. C. A. 212 (161 Fed. 48), it is held that the entering of satisfaction of a mortgage and taking of a new one, when designed by the parties to be merely a continuation of the first mortgage, and when the two acts are practically simultaneous or parts of the same transaction, is not an extinguishment of the mortgage, but a renewal thereof, and does not give priority to an intervening judgment or mortgage creditor of the mortgagor, especially where it is done in good faith, in ignorance of the existence of the intervening lien, and without any intention to release the lien of the mortgage. 27 Cyc. p. 1222; *Pearce* v. *Buell,* 22 Ore. 29 (29 Pac. 78); *International Trust Co.* v. *Davis & Farnum Manfg. Co.,* 70 N. H. 118 (46 Atl. 1054); 2 Jones on Mortgages (8th Ed.), pp. 736, 737, § 1244.

We do not commend the practice pursued by the First Mortgage Bond Company, Inc., but under the

facts here shown the decree of the trial court is affirmed, with costs.

BUSHNELL, SHARPE, CHANDLER, NORTH, and MC-ALLISTER, JJ., concurred with POTTER, J.

WIEST, J. (*dissenting*). I am not in accord with the opinion of Mr. Justice POTTER.

The issues are ruled by *Union Guardian Trust Co.* v. *Building Securities Corp.*, on rehearing, 280 Mich. 717.

In point of law the purchase at the foreclosure sale was by the trustee and inured to the benefit of the mortgage bondholders. The corporation being the trustee could not purchase in any other capacity. At the sale, without possession of the mortgage bonds, the trustee was exercising power expressly delegated by the trust indenture and the power, so employed, carried with its exercise continuance of the trust and the trustee thereafter held the title for and in behalf of the bondholders without power of control, management or incumbrance contrary to their rights therein.

The rights of plaintiff, holder of first mortgage bonds, are superior to rights of bondholders under the second mortgage and defendant must pay the plaintiff its proportionate share of the value of the security pledged by the first mortgage.

The decree should so provide, with costs to plaintiff.

BUTZEL, C. J., did not sit.