Joseph Bier, Appellee, v. Abe Weiler, Jacob Keiner, Mary L. Hoppe and Washington West, Appellants, interpleaded with Warren E. Fleming, Cornelia E. Fleming, Homer Greer, Inez Greer, Nicholas Haffner, Henry J. Fink, Trustee, and C. P. Otwell Defendants to decree in this case.

1. MORTGAGES, § 269*—*when mortgagee selling notes secured by mortgage may discharge mortgage as to subsequent bona fide purchasers.* The holder of notes and mortgage securing the same who sells and assigns the notes but retains the mortgage, in which he is named as mortgagee or trustee, has the lawful right to discharge such mortgage as to subsequent bona fide purchasers, notwithstanding such notes have not been paid.

2. MORTGAGES, § 278*—*when presumed that release deed has been delivered.* The recording of a release made by persons appointed in a mortgage or trust deed to execute the release carries with it as to subsequent bona fide purchasers the legal inference that the release deed has been delivered.

3. MORTGAGES, § 269*—*when release of is binding.* As between the parties or as to third persons having notice of the equities of others, a release of a mortgage made without the notes secured by such mortgage having been paid and in fraud of the holders of such notes would not be binding, but subsequent purchasers or incumbrancers without notice who have acquired their interest in good faith would be protected by such release by the trustee.

4. NOTICE, § 3*—*when sufficient to charge person with knowledge.* To constitute notice sufficient to charge a person with knowledge there must be something more than bare suspicion; it must appear

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

that such facts were suggested as would cause a prudent mind to investigate, and to fail to do so would be gross negligence on his part, and that such negligence would be of a character that would imply a fraudulent intent.

5. MORTGAGES, § 277*—*what is effect of release of record.* In the absence of any notice or ground of suspicion, it is not the duty of a purchaser to obtain an admission of payment from the holder of a note secured by trust deed regularly released of record.

6. MORTGAGES, § 119*—*when purchasers of notes secured by new mortgage have priority under new mortgage over holders of notes under old mortgage.* Where the purchaser of land assumed a mortgage thereon then of record given to secure certain notes, on the maturity of which such mortgage was released of record by the person authorized therein to release same and a new mortgage to secure new notes was given and duly recorded, and said new notes sold to parties who, as well as said purchaser of the land, were ignorant of the fact that the notes secured by the old mortgage had not been paid, and no suspicious or other circumstances existed tending to put the purchasers of such new notes upon notice of such fact, *held* that such purchasers of such new notes were bona fide purchasers and entitled to priority under such new mortgage over the holders of the notes under the old mortgage.

Appeal from the Circuit Court of St. Clair county; the Hon. GEORGE A. CROW, Judge, presiding. Heard in this court at the March term, 1916. Reversed and remanded. Opinion filed November 13, 1916.

C. H. G. HEINFELDEN and P. C. OTWELL, for appellants.

WINKELMANN & OGLE, for appellee.

SCHAEFER & KRUGER, for Nicholas Haffner.

MR. JUSTICE McBRIDE delivered the opinion of the court.

The appellee recovered a decree in the Circuit Court of St. Clair county, to reverse which the appellants prosecute this appeal.

It appears from the record in this case that Warren

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.
Vol. CCIII 10

E. Fleming was the owner of Lot No. 19, and the southeast half of Lot 20, in Abend's First Addition to the City of Belleville, St. Clair county, Illinois, and that on the 7th day of July, 1910, he secured a loan of $3,000 from Henry J. Fink, a loan broker of Belleville, and that to represent said loan he executed six promissory notes of $500 each, payable to Henry J. Fink, trustee, or order, and due three years after date with interest coupons attached, and numbered from 1 to 6 inclusive.   To secure the said notes the said Warren E. Fleming and his wife, Cornelia E. Fleming, executed to Henry J. Fink, trustee, a mortgage upon the above-described property.   Fink sold and assigned the six notes as follows:   No. 1, to Adolph A. Eggersman; No. 2, to Jacob H. Keiner; Nos. 3, 4 and 5, to Joseph Bier; and No. 6, to Nicholas Haffner, and the said notes were delivered to the respective purchasers and retained by them but the mortgage was left in the possession of Henry J. Fink.   On November 25, 1910, Homer Greer purchased the above-described property from Fleming paying him $500 in cash and assuming the Fleming mortgage for $3,000 and from that date Greer continued to pay the interest as it became due to Henry J. Fink and received from Fink the interest coupons attached to the respective notes.   The notes secured by the Fleming mortgage became due on July 7, 1913, and on that day, or a day or two previous thereto, Homer Greer told Fink that he could not pay the loan and wanted him to renew the loan, which Fink agreed to do, and on July 10, 1913, Fink and Greer went to the recorder's office in the courthouse at Belleville and there upon the margin of the recorded mortgage from Fleming to Fink, trustee, Fink, trustee satisfied the mortgage in full, in the presence of the deputy recorder.   This original mortgage was marked "Satisfied in full on July 10, 1913, C. A. Summers, Recorder," and was delivered by Fink to Greer.

Thereupon Greer delivered to Fink six notes in the sum of $500 each, payable to the order of Henry J. Fink, trustee, and signed by Homer Greer and Inez Greer, and also a mortgage duly executed by Homer Greer and wife and payable to Henry J. Fink, trustee. About a week after the maturity of the Fleming notes, Keiner, who was the owner of No. 2 note, presented it at Fink's office for payment. Fink advised Keiner that Greer had bought the property and had made a new mortgage for $3,000 and that he would let Keiner have note No. 2 of the Greer series in exchange for the Fleming note owned by Keiner. The exchange was made. A little later Fink paid Eggersman the $500 due him and took up note No. 1, of the Fleming series. On about July 15, 1913, Fink sold, assigned and delivered note No. 1 and No. 3 of the Greer series to Mary L. Hoppe for $1,000 in cash, and during the first week in August he sold, assigned and delivered notes Nos. 4 and 5 of the Greer series to Washington West for $1,000 in cash, and on August 13th he sold and assigned note No. 6 of the Greer series to Abe Weiler for $500 in cash. The said notes of the Greer series were delivered to the respective purchasers and have been in their possession from that time. It appears that the purchasers of the Fleming series and also of the Greer series had confidence in Fink's ability and integrity and gave no particular attention to the records but relied upon Fink for their information. It further appears that appellee Bier called upon Fink at two or three different times for his money and advised Fink that he wanted to be present when the money was paid, and Fink agreed to advise him when he would be ready to pay the money so that he could be present but Fink never advised him that the money was about to be paid, and on about the 25th of August, 1913, Fink absconded and left Belleville but his absence was not generally known until about the 4th of September. Haffner, who held one of the Fleming notes, called at

Fink's office to collect the same and was told to come around in a few days and he would fix the matter up, but no payment was made to him. It further appears that the property in question is not of sufficient value to secure the payment of all of the unpaid notes above described, and that some of the purchasers of the notes will have to suffer a loss in consequence thereof. On the 2nd of January, 1914, the appellee filed a bill for a foreclosure of the Fleming mortgage and the setting aside of the satisfaction thereof made by Fink as trustee upon the records.

The bill filed by appellee was in the usual form of bills for foreclosure of mortgages and alleged that the three notes owned by Bier of the Fleming series had not been paid and that the release of the mortgage made by Fink was fraudulent, without authority of law and void as to appellee and others holding the unpaid Fleming notes, and asked that the release of the mortgage made by Fink be set aside and that Bier be decreed to have a prior lien upon the property in controversy. The bill also alleged that at the maturity of the Fleming notes Greer executed and delivered to Fink six other notes of $500 each, and charges that they were delivered to Fink and that Fink was directed to indorse his name on each of said notes and distribute them among the respective owners of the Fleming notes, according to their several holdings. To this bill the appellee made Fleming, Greer and the purchasers of both series of notes parties. The several parties defendant answered the said bill, admitting the execution of the mortgages but denied that they had any knowledge that the Fleming notes had not been paid at the time of the purchase by them of the Greer notes, and alleged that the Greer notes were purchased by them after the Fleming mortgage had been satisfied of record. Each of the answers also deny any knowledge of fraudulent acts of the said Fink in the releasing of the Fleming mortgage, and

deny that they had any notice of the fact that the mortgage was released without authority or that the Fleming notes had not been paid.

The case was referred to the master to take testimony and to report conclusions, and thereafter the cause was heard before the chancellor upon exceptions, and a decree rendered finding that the appellee's lien and those of the unpaid Fleming notes were a prior lien to that of the appellants holding the Greer series of notes and directing a sale of the property.

The real question in controversy in this case is as to which series of notes the holders thereof have priority of lien. Many questions have been argued and citations presented as to what we regard as collateral matters herein which will not be commented upon except so far as they are connected with the principal questions involved. As we read this record there are two controlling questions, the determination of which will settle the rights of the parties to this suit. The first question is, Did Fink as trustee have a legal right to satisfy the mortgage that was given to secure the Fleming series of notes without the notes having first been paid? 2nd, Did the purchasers of the Greer series of notes have notice actual or constructive of the fraud practiced by Fink in the release of the Fleming mortgage or of the fact that the Fleming notes had not been paid? The first proposition has, as we think, been fully determined by the courts of this State. There was no assignment of the Fleming mortgage by Fink to any of the purchasers and Fink was named as the mortgagee or trustee therein and had the lawful right to discharge the Fleming mortgage, as to subsequent bona fide purchasers. The recording of a release made by persons appointed in a mortgage or trust deed to execute the release carries with it as to subsequent bona fide purchasers the legal inference that the released deed has been delivered. *Havighorst*

*v. Bowen,* 214 Ill. 90. ''Whether the release was in fact delivered to Bowen would seem to be not controlling as between the parties. It was made by the person pointed out in the trust deed to make it. It was placed of record, and under our recording act the fact that it was of record carried with it, as to appellees and innocent third parties, the legal inference that it was delivered. There is quite as much delivery of this deed as there could be of an entry of satisfaction on the margin of the record, and, as we have said, one is given the same legal effect as the other." *Havighorst v. Bowen, supra.*

"The law is well settled in this State that the trustee in a trust deed of the character of the one in question has the power, as to third parties, to release the lien created thereby so as to revest the title in the grantor, even though he does so without the consent of the holder of the indebtedness which the trust deed was given to secure and in violation of the obligations of his trust (*Mann v. Jummel,* 183 Ill. 523); and such release may be made even though the indebtedness secured by the trust deed is not due at the time the release is executed. (*Ogle v. Turpin,* 102 Ill. 148.) In equity, however, a release unauthorized by the terms of the trust deed or by the consent of the *cestui que trust* will have no effect upon the trust deed as between the original parties or as to subsequent purchasers with notice." *Vogel v. Troy,* 232 Ill. 484. While it is true that as between the parties, or as to third persons having notice of the equities of others, a release made without the notes that were secured by said mortgage having been paid and in fraud of the holders of such notes would not be binding, yet as to subsequent purchasers or incumbrancers without notice who have acquired interest in good faith, a release of a previous mortgage by the trustee would protect such bona fide purchasers and incumbrancers.

This brings us to a discussion of the second proposi-
tion as to whether or not the appellants were purchas-
ers without notice, actual or constructive, of the rights
of the holders of the Fleming notes. There is no evi-
dence in this record that the appellants, purchasers of
the Greer notes, had any actual notice that the Fleming
notes had not been paid and that the mortgage was re-
leased without the consent or direction of the owners
of the notes, but it is insisted that there were such
facts and circumstances surrounding the transaction
as to put appellants upon notice. In order to constitute
notice there must be something more than a bare sus-
picion; it must appear that such facts were suggested
as would cause a prudent mind to investigate, and to
fail to do so would be gross negligence upon his part,
and that such neglect would be of a character that
would imply a fraudulent intent. "If, in short, there
is not actual notice that the property is in some way
affected, and no fraudulent turning away from a
knowledge of facts which the *res gestæ* would suggest
to a prudent mind; if mere want of caution, as distin-
guished from fraudulent and wilful blindness, is all
that can be imputed to the purchaser, then the doctrine
of constructive notice will not apply; then the pur-
chaser will, in equity, be considered, as in fact he is,
a bona fide purchaser without notice." *Grundies v.
Reid,* 107 Ill. 312. "Enough must be shown to impute
to the subsequent purchaser bad faith, so as to taint
his purchase with fraud, in law. (*Doyle v. Teas,* 4
Scam. [5 Ill.] 202.) Mere want of caution, as distin-
guished from fraudulent and wilful blindness, is not
sufficient to charge a subsequent purchaser with con-
structive notice of an unrecorded deed." *Anthony v.
Wheeler,* 130 Ill. 128. The Supreme Court of the
United States, in the case of *Williams v. Jackson,* 107
U. S. 478, says: "It was suggested in argument that
as the first deed of trust showed that the notes secured

thereby were negotiable and were not yet payable, and that the land was not intended to be released from this trust deed until all the notes were paid, Williams was negligent in not making further inquiry into the fact whether they were still unpaid. But of whom should he have made inquiry? The trustees under the first deed and the original holder of the notes secured thereby, having expressly asserted under their own hands and seals that the notes had been paid, and Sweet and wife having apparently concurred in the assertion by accepting the deed of release and putting it on record, he certainly was not bound to inquire of any of them as to the truth of that fact; and there was no other person to whom he could apply for information, for he did not know that the notes had ever been negotiated, and had no reason to suppose that they had not been canceled and destroyed. To charge Williams with constructive notice of the fact that the notes had not been paid, in the absence of any proof of knowledge, fraud or gross or wilful negligence, on his part, would be inconsistent with the purpose of the registry laws, with the settled principles of equity, and with the convenient transaction of business."

The language in the above-entitled cause, of *Williams v. Jackson,* is quoted approvingly by our Supreme Court in the case of *Havighorst v. Bowen, supra.* The recording laws are designed to afford protection to parties acting in good faith and relying upon them, and in the absence of any notice or ground of suspicion it is not the duty of a purchaser to obtain an admission of payment from the holder of a note secured by trust deed regularly released of record. *Lennartz v. Quilty,* 191 Ill. 174. It is said in the case of *Ogle v. Turpin,* 102 Ill. 153: "The assignment of the notes operated as an equitable assignment of the mortgage, and the assignment was an instrument that related to or affected the title to land, and to become

operative as to creditors and purchasers the assignment of the mortgage should have been formally made and recorded, to charge notice to all persons dealing with the title, or at least the assignment on the note should have referred to the mortgage, and that assignment should have been recorded. As between the parties, the mere assignment, without recording, was all that was required to assign the mortgage, but as to strangers it was otherwise." · In that same case Justice Dickey, in rendering a concurring opinion, says: "When a man buys notes secured by mortgage he becomes thereby the equitable assignee of the mortgage, and acquires an equitable interest in the mortgaged lands. If he wishes to protect that interest against subsequent purchasers, he may do so by taking a written assignment of the mortgage, and placing that assignment upon record. Possibly a record of the assignment of the note would be sufficient."

The evidence in this case discloses that at the time Greer renewed the note with Fink he supposed that Fink was the owner of the notes. He says: "I gave these (referring to the Greer notes) to Fink for the purpose of taking care of the three thousand dollars that the mortgage already stood for. I never knew that the notes had been transferred to anybody. I really thought the money was being furnished by Mr. Fink. The coupons were always ready for me when I paid the interest.   *   *   *   I supposed it was Fink's money and that he had the notes. I supposed the money was coming directly from Fink." So far as the record and circumstances disclose, these Greer notes came to Fink in a regular way of a renewal of the loan. The Greer notes and mortgage were given to Fink in apparently the usual manner of renewing or making a loan. The notes were made payable to him and he was named as mortgagee or trustee in the mortgage.

It is said by counsel for appellee: "That when Fink came to Dr. West and Mrs. Hoppe and offered to sell to them the Greer notes, as alleged in the bill, they knew: (a) That the Greer notes had not been substituted for the Fleming notes, because they were still in Fink's hands; (b) that the Greer notes had not been sold for money with which to pay the Fleming notes, as in such case they would not have been in Fink's hands; (c) that Fink was then insolvent and would not have paid the Fleming notes, for his insolvency from July 10, 1910, hitherto, is alleged in the bill and not denied by them, hence confessed and requires no further proof." We do not regard these suggestions as of sufficient importance to impute to appellants bad faith in the purchase of the Greer notes. As to the first suggestion, there is nothing in the record showing that appellants knew that the Greer notes were to be substituted for the Fleming notes. As to the second suggestion, there is nothing showing that the notes were to be sold to procure money to take up the Fleming notes, and even if that had been the arrangement between Fink and Greer there is nothing to show that appellants had any notice of it. As to the third suggestion, the insolvency of Fink could not have affected the question, for so far as appears from the record or from any facts developed therefrom, Fink had the Fleming notes and was the owner of them. Appellants had no knowledge that the Fleming notes had ben sold to any one. While there is an allegation in the bill that Fink was insolvent from July 10, 1910, there is nothing in the record showing that these appellants knew of his insolvency. They all dealt with him as if he was perfectly solvent and reliable. We do not think that the facts, as disclosed by this record, bring this case within the rule announced in the case of *Blake v. Blake,* 260 Ill. 75, as contended for by appellee. There the property was sold by a guardian to his

brother, a deed made to him, and the brother then reconveyed the property to the guardian within a few days and the two deeds were filed for record at the same time; which, under the circumstances, was held by the court to be sufficient to put the purchaser upon notice.

It seems to us from the reading of this record that the appellants and appellee all trusted Fink, all knew that he was a real estate man and understood the real estate business, and none of them had any suspicion, or real cause for suspicion, that Fink was endeavoring to defraud any one. We believe that appellants had a right to be governed by what appeared of record, and that they would be bound by what appeared thereon, and that if the appellee and other purchasers of the Fleming notes were unwilling to trust Fink, they could have in some manner placed upon the record some notice of the fact that the Fleming notes had been sold to them, and if they had done so their rights would have been fully protected and doubtless Fink would not have been enabled to have defrauded any one by procuring the Greer mortgage. It is true that this is a hardship upon appellee and the other purchasers of the unpaid Fleming notes, but we are of the opinion that under the law the equities of this case are with the appellants and that the Circuit Court erred in rendering a decree for the appellee, in giving the appellee and the holders of the unpaid Fleming notes a prior lien to that of appellants, and the decree of the Circuit Court is reversed and the cause remanded.

*Reversed and remanded.*