BARTHOLOMEW FORTIER

*v.*

JACOB DARST.

1. ASSIGNMENT — *legal title.* Where the owner of a note, and a mortgage given to secure the same, assigns them upon a separate paper, for the purpose of enabling the assignee to make collection, such assignment will not pass the legal title.

2. ASSIGNEE OF EQUITABLE TITLE — *holds subject to equities.* The assignee of an equitable title, to enforce which, he must resort to a court of chancery, takes such title with all the equities and infirmities existing against it, and can claim nothing under it which his assignor could not have claimed.

WRIT OF ERROR to the Circuit Court of Peoria county, the Hon. S. L. RICHMOND, Judge, presiding.

Jacob Darst exhibited his bill in chancery in the court below, against Bartholomew Fortier, James McFadden, and another.

From the statements in the bill, and the evidence adduced on the hearing, it appears that on the 17th of April, 1849, McFadden, being indebted to Fortier in the sum of four thousand dollars, executed his four promissory notes for one thousand dollars each; and on the same day, to secure those notes, McFadden executed and delivered to Fortier a mortgage upon certain real estate, situate in the city of Peoria.

The notes having become due, and remaining unpaid, Fortier placed the same, together with the mortgage, in the hands of Manning & Merriman, attorneys in Peoria, for collection; they giving to Fortier a receipt therefor, which was as follows:

" Rec'd of Bartholomew Fortier four promissory notes of one thousand dollars each, all bearing date April 17, 1849, one payable Nov. 1, 1850; one payable Nov. 1, 1851; one payable Nov. 1, 1852, and the other payable Nov. 1, 1853; all signed by James McFadden, and payable to said Fortier. Also received the mortgage by which said notes are secured,

on French claims in the village of Peoria, numbered one, eleven, forty-one and forty-two ; all said notes drawing six per cent. interest from date ; and on which five hundred and ten dollars have been paid ; which are received for collection, and to be accounted for accordingly.

"MANNING & MERRIMAN.

" *Peoria, Illinois, July* 5, 1854."

Manning & Merriman, as attorneys for Fortier, instituted proceedings in the Circuit Court of Peoria county, by *scire facias*, to foreclose the mortgage against McFadden, and on the 12th day of May, 1857, obtained a judgment of foreclosure thereon. That judgment was afterwards reversed in the Supreme Court, at the instance of McFadden.

But during the pendency of the proceedings by *scire facias* in the Circuit Court, to wit, on the 15th day of March, 1855, Fortier, being an old man, between fifty and sixty years of age ; a Frenchman, but little acquainted with our language ; and unable to read or write, desired to procure some person to take entire charge of the matters connected with the notes and mortgage, and their collection ; and accordingly he employed Joseph L. Papin, as his agent for that purpose ; Fortier giving to Papin, upon the back of the receipt which had been previously given him by Manning & Merriman, an instrument as follows :

" I hereby assign to Joseph L. Papin the notes and mortgage within mentioned, and authorize him to collect said notes, by suit or otherwise, and to make such an adjustment thereof as to him may seem proper, the whole to be done at his own expense. Witness my hand and seal, this 15th March, 1855.

"BARTHOLOMEW FORTIER."

On the same day Papin gave to Fortier an instrument explanatory of the terms and conditions of the foregoing assignment, as follows :

First, reciting that Fortier had assigned to him the notes and mortgage in question, describing them, then proceeds : " which notes were assigned to me (together with the said mortgage) for collection ; it is understood, however, that the

sum of five hundred and ten dollars was paid on said notes, prior to July 5th, 1854. Now, I hereby agree with the said Fortier, to commence, or prosecute, all necessary suits, for the collection of said notes and interest, and to pay out of my own pocket, all attorney's fees, and all other costs and expenses which have been incurred, or which may be incurred, in the collection, or in the attempt to collect, said notes."

" And whenever, and as soon as, the said notes, or any part thereof, are collected, I agree to pay over to said Fortier, or his representatives, the two-thirds of whatever sum or sums may be so collected, both of principal and interest. Said Fortier is to be at no cost or expenses whatever about the business.

" Witness my hand and seal, this 15th March, 1855.

" J. L. PAPIN. [SEAL.]"

Fortier, becoming apprehensive, as he alleges in his answer, of serious obstacles intervening in the collection of the notes, on the second day of September, 1858, entered into the following agreement with McFadden, to wit :

After reciting that McFadden was then indebted to Fortier in the amount of the notes mentioned, and referring to the mortgage given to secure their payment, all being described and made a part of the agreement, the parties proceed to stipulate, that for the purpose of settling and adjusting all matters between them, McFadden was to pay over to Fortier all the rents accruing on a certain portion of the mortgaged premises, for four years from that time ; out of which rents Fortier was to pay certain taxes and insurance on the property, and the residue to be applied upon the notes secured by the mortgage. A further provision in this agreement was, that McFadden should thereafter pay interest on the debt at the rate of eight per cent. per annum.

In case the buildings insured should be destroyed, Fortier to apply the amount of the insurance upon the notes.

In case McFadden desired to sell certain portions of the mortgaged property, he could do so upon paying to Fortier the sum of two thousand dollars annually, until the notes should be fully paid.

Fortier was to suspend all proceedings for the collection of the notes for a period of four years from the date of the agreement; and to extend the time of payment of the same during that time, except so far as the rents and insurance might be applied for that purpose.

Fortier, also, by this agreement, released and discharged a certain portion of the premises from the mortgage.

He was also to keep the buildings, of which he was to receive the rents, insured to a certain stipulated amount. As soon as the notes should become fully paid, in any way, Fortier was to release and cancel the mortgage; and in case the whole amount should not be paid within the four years, Fortier might proceed to foreclose the mortgage upon a certain portion of the premises, without further litigation, McFadden having the right of redemption as in other cases, under the statute.

John T. Lindsey was authorized, as the agent of Fortier, to collect the rents, and to apply the proceeds as before stipulated. And finally, the agreement set forth, that if the notes should not be fully paid within the four years before mentioned, then Fortier was to have a decree of foreclosure for the amount remaining unpaid.

This instrument was filed for record in the office of the recorder of Peoria county, on the third day of March, 1860, and was duly recorded therein.

Lindsey, the agent of Fortier, acted under the appointment made in the foregoing agreement, in collecting the rents each month, from about the time it was executed until after the commencement of this suit; paying over the money to Fortier, about as it was received.

Papin, without having collected any part of the notes, executed an assignment to Darst, upon the back of the receipt before mentioned, given by Manning & Merriman to Fortier, as follows:

"I hereby assign to Jacob Darst all my interest in the within named notes, without recourse on me.

"Witness my hand and seal, at St. Louis, this 1st March, 1860.

"J. L. PAPIN. [SEAL.]"

In regard to this instrument, upon an examination of it, Lewis Howell, a witness on the part of Fortier, testified that there appeared to be some alteration of the date of the assignment by Papin to Darst — there appeared to have been an erasure for some purpose. Something had been erased, and the "1st" inserted — there appeared to have been a figure "7" under the letters "st." He did not think the change was made by the one who wrote the instrument; it did not look like it.

The judgment which had been rendered, as before mentioned, in the proceedings by *scire facias*, in favor of Fortier, against McFadden, was reversed at the April term, 1859, of the Supreme Court; and in April, 1860, a fee bill issued against Fortier, from that court, directed to the sheriff of Peoria county, for the costs in said cause. The fee bill was, by the sheriff, levied upon certain real estate, the property of Fortier; the property sold, and Darst became the purchaser. Fortier alleges that he had no knowledge of this levy and sale, until some time after the sale was made; and the record shows that he afterwards redeemed the premises so purchased by Darst.

In November, 1860, the mortgaged premises before referred to, were sold for taxes due to the city of Peoria for the year 1860, and Darst became the purchaser of the same for the sum of sixty-five dollars and sixty cents. Subsequently Fortier redeemed these premises from said tax sale, by paying to Darst the sum of one hundred and thirty-one dollars and twenty cents, which Darst accepted, and gave a receipt therefor on the back of his certificate of purchase.

These are the principal facts, as disclosed by the record, bearing upon the rights of the parties. Both Fortier and Darst claimed title to the notes and mortgage; Fortier, by virtue of his original ownership, with which, he insisted, he had never parted; and Darst, by virtue of the successive assignments from Fortier to Papin, and from Papin to himself.

Darst filed this bill to settle the rights of the parties in the premises, and a decree was rendered in the Circuit Court,

Fortier *v.* Darst.

establishing the ownership in the notes and mortgage to be in Darst, and perpetually enjoining Fortier from intermeddling any further with the same.

There was a question made upon the hearing in the court below, whether Darst did not have notice, directly, of the rights of Fortier, before he took the assignment from Papin ; but as that does not seem to enter into the decision of this court, it is omitted.

Fortier, not being satisfied with the decree of the Circuit Court, sued out this writ of error ; and by his assignment of errors, questions its correctness.

Messrs. H. GROVE, and COOPER & MOSS, for the plaintiff in error.

The assignments from Fortier to Papin, and from Papin to Darst, did not pass the legal title to the notes and mortgage; but, at most, only an equitable interest. Darst, therefore, took subject to all the equities existing between Fortier and Papin. The assignee of a *chose in action*, takes it subject to all the equities of the assignor. *Mangles* v. *Dixon*, 18 Eng. Law & Eq. R. 82 ; 1 Bro. Chan. Cas. 434 ; 1 P. Wms. 496 ; 2 Verm. 764 ; 4 Ves. 118 ; 9 Ves. 264. See also, *Sullivan* v. *Dollins*, 13 Ill. 85, and *McJilton* v. *Love*, ib. 495.

Messrs. WEAD & POWELL, for the defendant in error.

Mr. CHIEF JUSTICE CATON delivered the opinion of the Court.

We have here presented a most offensive exhibition of human depravity and dishonesty on the part of Papin, at least, if not of Darst. Fortier, an ignorant and evidently confiding man, placed in the hands of Papin, this mortgage and notes, for collection, in order to avoid further vexation and expense in their prosecution ; and agreed to give him one-third of the proceeds in consideration that Papin should take all trouble, and pay all expense. In violation of the trust and confidence reposed in him, he sets himself to work to get a tax title to

14

Fortier v. Darst.

the land; allows an execution to be issued against Fortier for costs, which he had occasioned in attempts to collect the amount; and finally, assigns his claim to the notes and mortgage to Darst, for the purpose of cheating Fortier out of the money due him. And Darst now files this bill to enjoin Fortier from intermeddling in the matter; claiming the whole to belong to him, as the *bona fide* assignee of Papin. We say, this is the most provoking exhibition of rascality we have lately met with. And we are strongly inclined to the opinion that Darst is as deeply implicated as Papin; but whether this be so or not, can make no difference with the final result of this suit. The legal title to the notes and mortgage has ever remained in Fortier. The only title Papin ever had to them, was an equitable title, and Darst could acquire no higher or better title than Papin had, under the assignment by Papin; even if that assignment were not a forgery, by reason of the alteration made in it, which is testified to by Howell, and is manifest on inspection of the instrument, which is before us. But waiving this, the complainant, by taking an equitable title, which he has to resort to a court of equity to enforce, took that title with all the equities and infirmities existing against it, and can claim nothing under it, which Papin, his assignor, could not have claimed. *Olds* v. *Cummings, ante,* p. 188. A party who comes into a court of equity, asking for equitable relief, which a court of law cannot afford him, and exhibits a case blotched all over with fraud and overreaching, as this is, must expect little favor or sympathy at our hands. Papin, by the gross violation of every obligation imposed on him by his agreement with Fortier, has forfeited all rights under it; and Darst, his assignee, who occupies no higher or better ground, also has no rights which he can assert under the agreement with Fortier, who must be allowed to go on and collect the money due him, and enjoy it, without further molestation from either Papin or Darst.

The decree is reversed, and the bill dismissed.

*Decree reversed, and bill dismissed.*