## Wm. N. Hazelrigg v. John Pursley.

1. PRACTICE—*Defenses to the Merits in Probate Matters May be Made for the First Time in the Circuit Court.*—Appeals from the County Court to the Circuit Court in probate matters carry up the entire case to be tried *de novo*, and all defenses, except those in abatement, which should be made at the first opportunity, may be interposed as well on the appeal as upon the original hearing in the County Court.

2. GUARDIAN AND WARD—*Practice as to Allowance of Final Report.*—As a general rule, a guardian's final account will not be allowed until the ward has had an opportunity to examine it, unless the guardianship terminates during infancy, when it may sometimes be allowed on notice to parties interested, a guardian *ad litem* being appointed for the ward.

3. SAME—*The Rule as to Use of the Ward's Money for His Support Stated.*—Section 19, Chapter 64, R. S., gives a guardian a limited power to use the income of his ward's property for the comfort, support and education of the ward, and the language employed excludes the idea that the principal can be so used without an order of the court.

4. SAME—*Duty of Guardian to Invest Funds and Make Reports— Method of Accounting in Case of Failure.*—It is the duty of a guardian to lend the money of his ward as the statute provides, and to make full and specific reports, showing the items, separately, of all expenditures, and having failed to pursue this course, he should not be permitted to take credit for more than the money would have produced, if loaned as the law required, nor more than he is able to show was actually expended in addition to the fair value of what he himself furnished, less the value of any services rendered by the ward.

5. SAME—*Guardian Must Protect Rights of Ward.*—It is the duty of a guardian to ascertain and secure the right of his ward, and if for want of ordinary care in that behalf the ward suffers, the guardian should be held responsible.

Citation in Probate.—Appeal from the Circuit Court of Pike County; the Hon. JEFFERSON ORR, Judge, presiding. Heard in this court at the November term, 1896. Reversed and remanded. Opinion filed February 25, 1897.

J. M. RIGGS, attorney for appellant.

W. H. CROW and W. L. COLEY, attorneys for appellee.

MR. JUSTICE WALL DELIVERED THE OPINION OF THE COURT.

The appellant cited the appellee to appear in the County Court and make settlement of his accounts as the guardian of appellant, who had then attained majority. The appellee appeared in response to the citation and submitted his account, whereupon the County Court found there was due from him to the appellant the sum of $1,288.39, which he was ordered to pay within ten days, from which he prayed an appeal to the Circuit Court, where, upon hearing, he was found to be indebted to the appellant in the sum of $350, and by the action of appellant the record is brought to this court.

The appellee assigns as cross-error that the Circuit Court refused to dismiss the proceedings for want of jurisdiction. This rests upon the proposition that previous to the issuance of the said citation, and before appellant came of age, the appellee presented his final report as guardian to the County Court, showing that the ward was indebted to him; that the County Court, of its own motion, struck out the charge of a balance against the ward, leaving the account even, and approving the report as so modified, discharged the guardian.

It is urged this was an adjudication and operated to bind the ward so that no subsequent investigation of the accounts could be made by that court. This objection was presented for the first time in the Circuit Court on a motion to dismiss for want of jurisdiction, and was overruled. In the brief

of the appellant it is urged that the appellee waived this objection by appearing in the County Court and filing his report, and that the objection in the Circuit Court came too late.

It does not appear that the motion to dismiss was passed upon by the Circuit Court when made, but seems to have been reserved to the final hearing, when, as appears by the order then entered, the court found that said report and the order of the County Court approving the same should be set aside. If that order of the County Court was valid and effective, it was an adjudication which might be pleaded in bar of the subsequent citation, and the right to so plead it would not be waived by the omission to make such defense in the County Court.

By the appeal to the Circuit Court the whole case was carried up, and was to be tried *de novo*. Had this defense been pleadable in abatement merely, it should have been made at the first opportunity, but as it is a bar to the proceedings, if valid, it could be interposed as well on the appeal as upon the original hearing in the County Court.

The question therefore is, what legal significance is to be attached to those proceedings?

That report was presented on the 24th of October, 1893, showing the balance on hand at the date of the last report, which was February 23, 1884, some nine years before, $713.09, and interest thereon to date, $413.58, making a total of $1,126.67. The credits asked were as follows:

| 1883. | 10 month's board, washing, schooling, omitted from report | $120 | 00 |
| | Interest at 6 per cent | 72 | 00 |
| 1884. | 12 month's board, etc | 144 | 00 |
| | Interest at 6 per cent | 77 | 76 |
| 1885. | 12 month's board, etc | 144 | 00 |
| | Interest at 6 per cent | 69 | 12 |
| 1886. | 12 month's board, etc | 144 | 00 |
| | Interest at 6 per cent | 60 | 48 |
| 1887. | 12 month's board, etc | 132 | 00 |
| | Clothing for 5 years | 100 | 00 |
| | Interest at 6 per cent | 83 | 52 |

| | | |
|---|---|---|
| 1888. Board and clothing, 6 months............ | 72 | 00 |
| 1889. Board and clothing, 6 months............ | 72 | 00 |
| Interest on same at 6 per cent............ | 38 | 98 |
| Costs of report......................... | 2 | 00 |

Total disbursements.................$1,331 86
Showing a balance in favor of the guardian of..$  205 19

As already stated, the County Court reduced the credits by changing the footing so as to balance the charges, approved the report in that condition and discharged the guardian. No vouchers or proofs accompanied the report nor was any evidence presented to support it. This report purported to be final. The ward was not represented and knew nothing of it. In form it was not in accordance with the statute, Sec. 16, Ch. 64, which requires that the expenditures shall be specifically set forth in separate items and with proper vouchers. It gave the court no foundation upon which to predicate any action. It should not have been received or considered. We are inclined to hold that the proceedings thereon can not be regarded as an adjudication binding upon the ward. Hence when he came of age, he might cite the guardian to make a final report, regardless of those proceedings. As a general rule, a guardian's final account will not be allowed until the ward has an opportunity to examine it, unless the guardianship terminates pending infancy, when it is sometimes allowed on notice to parties interested, a guardian *ad litem* being appointed for the ward. Wait's Ac. & Def., Vol. 3, 577; Am. & Eng. Ency., Vol. 9, 144. The proceeding being *ex parte* the judgment therein was only *prima facie* correct, and though not then excepted to or appealed from was open to subsequent correction or challenge. Bond v. Lockwood, 31 Ill. 212.

It appears from the evidence that in 1883 or 1884 the ward, being then about eleven years old, was taken into the family of the guardian and there remained until he was past nineteen. He was a strong and intelligent boy, was useful and willing, and was required to work according to his strength and ability about the farm of the guardian. The evidence very forcibly tends to show that his services were

worth as much as his board and clothes and school supplies. No account of any of these items was ever kept by the guardian, and when he came to make his report of October, 1893, he merely made an estimate of them in a lump sum for each year up to and including 1889, and attempted to prove that the charges were reasonable.

Assuming they were, can he be permitted in this way to break in upon the principal of the ward's estate?

In Davis v. Harkness, 1 Gil. 173, it was said that at common law it was a general rule that the expenses of the ward shall be kept within the income or produce of his estate though a court of chancery or other proper court would in case of necessity order a portion of the principal to be so appropriated, always using great caution in that respect because of the manifest danger of injury to the ward under guise of his supposed wants, with incidental benefits to the guardian, and cited the statute then in force, which provided that the guardian should have power to superintend the nurture and education of the ward, and for that purpose might pay out such portion of the ward's money as the Court of Probate might from time to time direct, provided the income from the real estate, and next, the interest on money, should be first resorted to. The present statute provides that " the guardian shall manage the estate of his ward frugally and without waste, and apply the income and profit thereof, so far as the same may be necessary, to the comfort and suitable support and education of his ward." Sec. 19, Ch. 64. The power here given to use the income for the specified purposes is limited, and the language employed excludes the idea that the principal can be so used without authority of the court. Other sections provide for loaning the money and leasing the real estate of the ward.

It was the duty of the guardian to loan the money as the statute provided, and to make full and specific report, showing the items, separately, of all expenditures from time to time, as required by section 16. Had this been done annually the court would have been able to ascertain whether it was necessary to expend more than the income, and, in view of the evidence in this record, it is probable that upon a full

hearing it would have been found that the income from interest and the ward's services would have equaled and perhaps exceeded all necessary outlays for nurture and education. Having failed to pursue this course the guardian should not be permitted now to take credit for more than what the money would have produced if loaned as the law required, nor more than he is able to show was actually expended in addition to the fair value of the board furnished by himself, less what the ward's services were reasonably worth. An accounting on this basis would give the ward the whole of the money reported as on hand at the date of the first report, February 23, 1884, and so much of the interest thereon as would not be consumed by the credits, to be ascertained as indicated.

It is claimed on behalf of appellant that had the guardian taken the proper steps he might have obtained an allowance on account of the statutory award from the estate of the ward's mother, and that there was a sum of money due him which should have been realized from the partition of his father's lands. As the case must be reversed we do not care to express any opinion upon these points for the reason that it is not very clear what were the facts in reference thereto. As to the award, it was the guardian's duty to carefully scrutinize the proceedings of the appraisers and of the administrator, to ascertain and secure whatever the law gave his ward, and if for the want of ordinary care in that behalf the ward has suffered the guardian should be held responsible. So of the proceeds of the partition sale; if by his neglect the ward has lost his portion, he ought to respond.

On another trial the facts as to these matters can be more fully presented and the court will make such order in respect thereto as may seem proper. The judgment will be reversed and the cause remanded.