(No. 17335.—Appellate Court reversed; city court affirmed.)
WILLIAM CONNOR *et al.* Plaintiffs in Error, *vs.* ROBERT E.
WAHL, *et al.* Defendants in Error.

*Opinion filed April 21, 1928.*

1. EQUITY—*loss must be sustained by party enabling wrongdoer to commit fraud.* Where one of two innocent persons must suffer by reason of the fraud or wrong conduct of another the burden must fall upon him who put it in the power of the wrongdoer to commit the fraud or do the wrong.

2. MORTGAGES—*purchaser of subsequent trust deed may rely on record of release of prior encumbrance.* As the trustee in a trust deed has power to release the lien so as to re-vest the legal title in the grantors, a release of a trust deed, although unauthorized, is ineffective only as to the original parties or subsequent purchasers with notice, but the purchaser of a subsequent trust deed given to renew a prior loan may rely on the record showing a release of the prior encumbrance after its maturity, where he had no notice of the trustee's lack of authority. (*Olds* v. *Cummings,* 31 Ill. 188, distinguished.)

3. SAME—*when a purchaser of third trust deed has prior lien.* A purchaser of a trust deed and note who relies upon the record, which shows a due release, after maturity, of two earlier trust deeds by the same maker, and who records a written assignment to himself of the trust deed and note so purchased, is entitled to a prior lien on foreclosure involving the three trust deeds, where it appears that the releases by the trustee were made without the knowledge of the legal owners of the notes, which were payable to the order of the trustee, who converted the proceeds of the second and third notes to his own use though he continued to pay interest on the first two notes to the holders, neither of whom recorded any assignment to them or gave any notice of ownership to the mortgagors, who executed second and third trust deeds and notes supposing the original note was being renewed.

4. DEEDS—*purchaser is entitled to rely on public records.* The public records of conveyances and instruments affecting the title to real estate are established by statute to furnish evidence of such title, and a purchaser has a right to rely upon such records unless he has notice or is chargeable with notice of some title, conveyance or claim inconsistent therewith.

HEARD, C. J., and FARMER, J., dissenting.

Writ of Error to the Appellate Court for the Fourth District;—heard in that court on appeal from the City Court of East St. Louis; the Hon. William F. Borders, Judge, presiding.

D. E. Keefe, and H. G. Miller, for plaintiffs in error.

C. E. Pope, and H. F. Driemeyer, for defendant in error Adam Eitzenhefer.

Mr. Commissioner Partlow reported this opinion:

This case comes to this court on a petition for *certiorari* to review a judgment of the Appellate Court for the Fourth District reversing a decree of the city court of East St. Louis in favor of plaintiffs in error in a mortgage foreclosure proceeding.

The facts are undisputed and are substantially as follows: Robert E. Wahl and Myra Wahl, his wife, were the owners of certain real property here involved, and made application to John W. Renshaw's Sons, a real estate firm of East St. Louis, for a loan. On May 16, 1914, the Wahls executed to Henry T. Renshaw, trustee, their promissory note, and a trust deed securing the same, for $1700, due in three years, with interest at six per cent. The note and trust deed were delivered to Renshaw, who had the trust deed recorded. Later, during the same year, Renshaw endorsed the note and sold it and delivered the trust deed to Adam Eitzenhefer, who has since retained title thereto and had possession thereof. No written assignment of the trust deed was executed or recorded and no notice of such assignment was given to the Wahls. The Wahls paid to Renshaw the interest due on the note until its maturity, and he paid the same to Eitzenhefer. After the note became due Renshaw continued to pay interest thereon to Eitzenhefer until the Renshaw firm failed, in August, 1922, but no part of the principal has been paid. When this loan,

which we shall designate as No. 1, came due, in 1917, the Wahls, who were not aware of the sale and delivery of the note and trust deed, gave to Renshaw a new note for $1700, secured by a trust deed to Renshaw as trustee. This loan No. 2 was given for the express purpose of renewing loan No. 1, and Renshaw, without the knowledge of Eitzenhefer, after maturity, entered upon the public record a marginal release of the trust deed under loan No. 1. The trust deed under loan No. 2 was recorded, and during October, 1917, Renshaw sold this note and trust deed to E. F. Voightlander, who paid him the full amount of the note and has since retained title to and possession of the papers under that loan. No written assignment thereof was executed or recorded and no notice thereof was given the Wahls, who paid the interest to Renshaw upon loan No. 2 until May, 1922, and he paid the same to Voightlander, but no part of the principal has ever been paid. The money received by Renshaw for the sale of the note and trust deed under loan No. 2 was converted to his own use. Until 1922 Renshaw paid interest on loan No. 1 to Eitzenhefer and interest on loan No. 2 to Voightlander. During May, 1922, the Wahls, supposing that their first note and trust deed had been fully paid by the note and trust deed under loan No. 2 and that Renshaw still held the papers under the second loan, executed to Renshaw a third note for $1700, secured by a trust deed on the same property, for the sole purpose of renewing loan No. 2. The note and trust deed as described in loan No. 1 were not taken up and delivered to the Wahls, nor were the note and trust deed taken up or canceled under loan No. 2. Renshaw entered on the record, after maturity, a marginal release of loan No. 2 without the knowledge of Voightlander, who was at that time the owner and holder of the note and trust deed under that loan. The trust deed under loan No. 3 was recorded, and instead of using the note and trust deed under loan No. 3 for the purpose intended, Renshaw, during July, 1922, sold and assigned that

note and trust deed to William and Nellie Connor, plaintiffs in error here, and they took a written assignment thereof from Renshaw and placed the same of record. At the time they purchased that note and trust deed they relied upon a certificate of title which showed that the prior trust deeds designated herein as Nos. 1 and 2 had been released. The real estate firm of John W. Renshaw's Sons failed during August, 1922, and finally went into bankruptcy. Thereafter the parties interested in the securities discovered the fraud and rascality of Henry T. Renshaw, and William and Nellie Connor filed a bill in the city court of East St. Louis to foreclose the trust deed under loan No. 3. Eitzenhefer filed a cross-bill to foreclose his trust deed under loan No. 1, and Voightlander filed an original bill to foreclose the trust deed under loan No. 2. The suits were consolidated and issues joined. The Wahls set up *inter alia* that the second note and trust deed were given for the purpose of taking up the first loan, and that the third note and trust deed were given to take up the second note and trust deed, and that none of them was used by Renshaw for the purpose for which they were delivered to him. Upon reference to the master he filed his final report finding the facts substantially as heretofore stated, and recommended a decree for the foreclosure of the first trust deed, that the release thereof be set aside and that the Connor and Voightlander bills be dismissed for want of equity. Objections were filed to the master's report, which were overruled and allowed to stand as exceptions. The court found the trust deed under loan No. 3 to be a first lien, the trust deed under loan No. 2 to be a second lien, and the trust deed under loan No. 1 to be a third lien, and ordered a sale of the property and a distribution of the proceeds accordingly. Eitzenhefer and the Wahls appealed to the Appellate Court for the Fourth District, where the decree was reversed and the cause remanded to the city court of East St. Louis, with directions to enter a decree foreclosing the first trust deed under loan

No. 1 and dismissing the bills of Voightlander and the Connors. The Connors have brought the case here for review upon *certiorari.*

The principal question in dispute is as to the priority of liens as between the owners of the trust deeds and notes under loans Nos. 1, 2 and 3. The Connors contend they should have preference because they are *bona fide* purchasers of the note and trust deed under loan No. 3 without notice of any prior incumbrance upon the property, and because the written assignment to them of the trust deed was recorded and the other two assignments were not of record. They argue that they had a right to rely upon the record as disclosed by the certificate of title showing that the two trust deeds under loans Nos. 1 and 2 had been released. They refer to section 30 of the Conveyance act. The Wahls claim that plaintiffs in error took the assignment of the third trust deed and note subject to all defenses which existed between the Wahls and the trustee; that a fraud was committed by the trustee, and as the trustee could not foreclose, therefore plaintiffs in error cannot foreclose.

In support of their contention defendants in error cite *Olds* v. *Cummings,* 31 Ill. 188. In that case Cummings executed a note and mortgage to Preston, who assigned them to Olds, who claimed the assignment was made before maturity. Olds filed a bill to foreclose the mortgage. Cummings filed an answer setting up usury against Preston, alleging that the note was assigned to Olds after maturity, that the assignment was colorable, only, and not *bona fide,* was made to prevent the defense of usury, and that the mortgagor could raise the question as against Olds as assignee. The trial court held that there was usury and that Olds had notice. Olds appealed to this court and the decree was affirmed. This court held that it was not necessary to determine whether Olds was a *bona fide* purchaser before maturity; that choses in action, including mortgages, are not assignable either by the common law or under the

statute; that the assignment of a promissory note secured by a mortgage carried with it the mortgage only in equity; that where a person buys that which is not assignable at law, relying upon a court of chancery to protect and enforce his rights, he takes it subject to all the infirmities to which it would have been liable in the hands of the assignor; that under a bill to foreclose a mortgage the court will let in any defense which would have been good against the mortgagee, regardless of the fact that the assignee may have purchased the note in good faith and before maturity. It was also held that it is the duty of the purchaser of a mortgage to inquire of the mortgagor if there are any reasons why it should not be paid, but that he should not be required to inquire of the whole world to see if someone has a latent equity which might interfere with his purchase of the mortgage; that courts of equity in such cases will not be confined to legal forms and titles but will look to the substantial, equitable rights of the parties and allow parties who have equitable rights to enforce those rights in their own names without regard to legal titles; that while courts of equity will enforce equitable rights, they will do so with a scrupulous regard to the equitable rights of others. They will look into all the circumstances and will not enforce the equitable right if it ought not to be enforced in the hands of the assignor.

The only question before the court in the *Olds case* was whether the defense of usury, which was good as against the mortgagee, could be enforced against his assignee, with or without notice. There was no question in that case as to the effect of the release of a trust deed by the trustee, or the failure of the mortgagor to take up the first note and mortgage before he executed the second note and mortgage, or the right of the assignee to rely on what the public record showed with reference to the title. There was no evidence showing any equities between the mortgagor and the assignee except that the mortgagor claimed usury as

against the mortgagee. The mortgagor had not by any neg-
ligence on his part defeated or curtailed his right to im-
pose that defense against the assignee. On account of these
additional questions which enter into the case at bar, the
*Olds case* is not conclusive of the questions raised in this case.

It is insisted that under the rule announced in *Olds* v.
*Cummings, supra,* it was the duty of plaintiffs in error to
inquire of the Wahls whether there was any reason why
the note and trust deed should not be paid. The evidence
shows that such inquiry would have been of no avail as
far as the discovery of equities was concerned. The Wahls
executed the third trust deed and note, which they had not
paid. If inquiry had been made of them with reference
to the legality of these instruments they would necessarily
have answered that the instruments were valid and subsist-
ing claims, that they were unpaid, and that the two ·prior
trust deeds had been released. Such inquiry would not
have led to discovery of the fraud practiced by the trustee.

The facts in *Mann* v. *Jummel,* 183 Ill. 523, are very
similar to the facts in the case at bar. On September 30,
1886, Thomas conveyed certain property to Schintz, as trus-
tee, to secure a note for $4000, due in five years, with ten
coupon interest notes, each for $130. The notes were
transferred to John Lobstein. On September 30, 1891, the
principal note was extended in writing to September 30,
1896, upon·the execution of ten new interest notes for $130
each. On October 12, 1891, Schintz sold the principal note
and the ten new interest notes to appellant, Mann. The
trust deed had been filed for record on October 5, 1886,
and no change was ever made in that record showing the
assignment to Lobstein, Schintz or Mann or the extension
of the time of payment. About August 30, 1896, Thomas
applied to Schintz for a further extension, and was in-
formed that the holder wanted the money but another party
would take the loan upon the execution of new papers and

that Schintz would use the proceeds of the new loan to pay off the old one. Thomas made a new note and a new trust deed to Schintz in all respects like the first. The new trust deed was executed September 14, 1896, and recorded the following day. On September 30, 1896, Schintz told Mann that Thomas wanted the loan extended for a year, to which Mann agreed. A few days later Mann received from Schintz $130 in payment of the last interest note. He did not receive any extension agreement or new interest notes but he retained the original principal note without any change, relying on the statement of Schintz that Thomas wanted the time extended. On April 1, 1897, Schintz paid to Mann $130, being six months' interest due if the loan had been extended. On October 6, 1896, Schintz executed a release, which conveyed to Thomas all title acquired by Schintz under the trust deed of September 30, 1886. After recording this release, on October 14, 1896, Schintz sold the new note to appellee, Jummel, for its full value and accrued interest. When the first interest fell due, March 9, 1897, Schintz sent Jummel a check for it. Schintz did not apply the proceeds of the second note to the payment of the first but appropriated the money to his own use. In July, 1897, his financial worthlessness and rascality became known. Mann filed a bill to foreclose. Thomas and Jummel filed answers and cross-bills, Jummel alleging that his trust deed became a first lien. A decree was entered in favor of Mann, giving Jummel a second lien and dismissing the cross-bill of Thomas. An appeal was prosecuted to the Appellate Court, where the decree was reversed and the cause remanded, with directions to enter a decree giving Jummel a first lien and Mann a second lien, and that decree was affirmed by this court.

The question in the *Mann case* was whether Schintz, who held the legal title in trust under the first trust deed for the benefit of Mann, the owner of the note secured by

it, had the power, without the consent of the holder of the note, to make the release of the first trust deed. On page 531 this court said: "A trustee in deeds of trust of this kind has the power to release the lien so as to re-vest the legal title in the grantor, even though he does so without the consent of the *cestui que trust* and in violation of the obligations of his trust. (*Walton* v. *Follansbee,* 131 Ill. 147, and cases cited.) In equity, however, a release unauthorized by the terms of the trust or by the *cestui que trust* will have no effect upon the deed of trust as between the original parties or as to subsequent purchasers with notice; (*Barbour* v. *Scottish-American Mortgage Co.* 102 Ill. 121; *Stiger* v. *Bent,* 111 id. 328; *Insurance Co.* v. *Eldridge,* 102 U. S. 545; *Williams* v. *Jackson,* 107 id. 478;) and we think the law is, that when the record shows that the release was executed after the indebtedness was past due, in the absence of all evidence of notice to the subsequent purchaser he will be protected. * * * It must, we think, be also conceded in this case, if appellee had examined the record or procured an abstract of it and acted upon what it showed, he would have been fully justified in acting upon the validity of the release, as against any holder of the old indebtedness, upon the presumption of payment, arising from the fact that it was long past due. * *. * We cannot regard these parties as equally innocent, as a matter of law. True, both acted honestly and confided in Schintz. Neither had a bad motive in anything he did or attempted to do, but Mann, by failing to record the assignment to himself and by allowing the indebtedness due him to remain of record as being long past due and failing to record the first extension agreement, was negligent of his own rights and must suffer the consequences." It will be observed that Mann was the owner of the note secured by the first trust deed which he sought to foreclose and which had been released by Schintz before it had been paid and while the note which it secured was still in the hands of

Mann. Jummel was the owner of the note secured by the second trust deed, both of which had been made to Schintz as trustee. Jummel took the second note after the release of the first trust deed, therefore he occupied the same position in that case that plaintiffs in error occupy in this case. Under these facts it was held that the second trust deed held by Jummel was a first lien on the property.

In support of the holding in *Mann* v. *Jummel, supra, Williams* v. *Jackson,* 107 U. S. 478, is cited. In that case, by a trust deed duly recorded, land was conveyed to trustees in fee, and they were authorized to release the trust deed to the grantor upon the payment of the negotiable promissory note thereby secured. Before that note was paid or payable, and after it had been negotiated to an endorsee in good faith for full value, a deed of release reciting that it had been paid was made to the grantor by the trustees, who were the payees of the note, and the release was recorded. The grantor executed and recorded a like trust deed to secure the payment of a new note for money loaned to him by another person, who had no actual notice that the first note had been negotiated and was unpaid, and who required and was furnished with a conveyancer's abstract of title showing that the deeds were recorded and the land free from encumbrance before he would make the loan. It was held that the legal title was in the trustee under the second trust deed, and that the note thereby secured was entitled to priority of payment out of the land. The only distinction between the case at bar and the *Williams case* is, that in the case at bar the three trust deeds were all executed to the same trustee, while in that case the second trust deed was executed to a third party; but the decision in the *Mann case* holds that this distinction makes no difference in the equitable rights of the parties.

In the case at bar the Wahls executed trust deed No. 2 and the note which it secured, without requiring the trustee to surrender trust deed No. 1 and the note which it

330—10

secured, which were not owned by or in the possession of
the trustee. Trust deed No. 3 was executed in the same
manner. By so doing they placed it within the power of
the trustee to commit the fraud which caused innocent pur-
chasers to suffer. If they had not so acted the trustee would
not have been able to secure either the second or third trust
deed without the surrender of the prior trust deeds and
notes which they were intended to cancel, and the fraud
would have been avoided. Where one of two innocent per-
sons must suffer by reason of the fraud or wrong conduct
of another the burden must fall upon him who put it in
the power of the wrongdoer to commit the fraud or do the
wrong. *Springer* v. *Kroeschell,* 161 Ill. 358; *Williams* v.
*Fletcher,* 129 id. 356; *Anderson* v. *Armstead,* 69 id. 452.

Before plaintiffs in error took an assignment of the
third trust deed and the note which it secured they took
the precaution of securing an abstract of the title which
showed that the third trust deed was the only lien on the
property. They took a written assignment of the deed and
placed it upon the public records. Any inquiry of the Wahls
would not have revealed the fraud. Plaintiffs in error did
all they could be expected to do to inform themselves as to
the condition of the title. It is conceded that they took
the title by assignment without notice of existing prior trust
deeds, both of which had been released. An unbroken line
of decisions holds that a release of a trust deed unauthor-
ized by the terms of the trust, or by the *cestui que trust,*
affects only the right of the original parties or subsequent
purchasers with notice. Since in law the trustee has power
to release a lien so as to re-vest the legal title in the grant-
ors, even though he does so without the consent of the
*cestui que trust* and in violation of the trust, it follows
that the releases in question in this case, which were exe-
cuted after the notes were due, were good as to plaintiffs
in error, who had no notice of any lack of authority on the
part of Renshaw to release the first and second trust deeds.

The public records of conveyances and instruments affecting the title to real estate are established by statute to furnish evidence of such title. A purchaser has a right to rely upon such records unless he has notice or is chargeable with notice of some title, conveyance or claim inconsistent therewith. (*Lennartz* v. *Quilty,* 191 Ill. 174; *Stokes* v. *Riley,* 121 id. 166.) If reliance cannot be placed on the disclosures of the records relative to such title, then no one can purchase an interest in real estate free from the possibility that somewhere in the chain of title a mortgage or trust deed has been assigned and wrongfully released by the trustee.

Since the first and second trust deeds are still outstanding by reason of the negligence of the persons who executed them to demand that they be surrendered on executing a renewal trust deed and since they are held by purchasers thereof in good faith, the burden must fall upon him who put it in the power of the wrongdoer to commit the fraud or to do the wrong. The third trust deed was a first lien, the second trust deed was a second lien, and the first trust deed was a third lien.

The judgment of the Appellate Court will be reversed and the decree of the city court will be affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment of Appellate Court reversed.*
*Decree of city court affirmed.*

HEARD, C. J., and FARMER, J., dissenting:

The opinion of the court in this case appears to be based upon a misconception of the issues raised by the pleadings. It states: "The principal question in dispute is as to the priority of liens as between the owners of the trust deeds and notes under loans Nos. 1, 2 and 3." The question raised

by the answer of the Wahls is not a question of the priority of liens, but is whether the owners of the trust deeds and notes are entitled in equity to foreclose their trust deeds at all. Voightlander seeks to foreclose trust deed No. 2 as the assignee of Renshaw. The Connors seek to foreclose trust deed No. 3 as the assignee of Renshaw. The answer of the Wahls sets up facts which would be good defenses if Renshaw himself were asking to foreclose them. These defenses, as against Renshaw, are established by the undisputed evidence. The question, therefore, is, Can Voightlander and the Connors foreclose trust deeds which their assignor, Renshaw, could not?

At common law choses in action were not assignable. By statute in this State promissory notes are made assignable by endorsement thereon, and in equity, and in equity only, such endorsement constitutes an assignment of a trust deed or mortgage given to secure such note. He who buys what is not assignable at law, relying upon a court of equity to protect and enforce his rights, takes it subject to all infirmities to which it is liable in the hands of the assignor. In *Olds* v. *Cummings,* 31 Ill. 188, it is said: "We have not met with a single case where remedy has been sought in a court of chancery upon a mortgage by an assignee, in which every defense has not been allowed which the mortgagor or his representatives could have made against the mortgagee himself, unless there has been an express statute authorizing the assignment of the mortgage itself." The assignee of an equitable title, to enforce which he must resort to a court of chancery, takes such title with all the equities and infirmities existing against it and can claim nothing under it in a court of chancery which his assignor could not have claimed. *Fortier* v. *Darst,* 31 Ill. 212; *Peck* v. *Bligh,* 37 id. 317; *Walker* v. *Dement,* 42 id. 272; *Sumner* v. *Waugh,* 56 id. 531; *Cramer* v. *Willetts,* 61 id. 481; *Haskell* v. *Brown,* 65 id. 29; *Thompson* v. *Shoemaker,* 68 id. 256; *Colehour* v. *State Savings Institution,* 90 id. 152;

*United States Mortgage Co.* v. *Gross,* 93 id. 483; *Silverman* v. *Bullock,* 98 id. 11; *Towner* v. *McClelland,* 110 id. 542; *Shippen* v. *Whittier,* 117 id. 282; *Mullanphy Savings Bank* v. *Schott,* 135 id. 655; *Humble* v. *Curtis,* 160 id. 193; *McAuliffe* v. *Reuter,* 166 id. 491; *Buchler* v. *McCormick,* 169 id. 269; *Lauf* v. *Cahill,* 231 id. 220; *Peacock* v. *Phillips,* 247 id. 467; *King* v. *Harpster,* 306 id. 202.

This case differs from *Mann* v. *Jummel,* 183 Ill. 523, cited in support of the conclusion reached by the majority. In that case the contest in this court was not between the mortgagor and the assignees of the notes secured by the instrument sought to be foreclosed but was a contest between lienors. In the opinion of the court it is said: "The sole contention between the present parties is which shall have the prior lien. They do not disagree as to the material facts, but each insists that under the law applicable to those facts his is the prior security." It is evident from reading the opinion in that case that the question here raised by the Wahls was not presented to the court, as it is not mentioned in the opinion. The question of the priority of liens or of the effect of the recording laws does not enter into the question here involved. Since in this case, in equity, the trust deeds sought to be foreclosed are subject to all the equities and defenses of the Wahls as against Renshaw, and as the evidence shows that the Wahls have an equitable defense as against him, and as under the unbroken line of authorities in this State any equitable defense which the Wahls have against Renshaw is good as against his assignees, Voightlander and the Connors, neither Voightlander nor the Connors are entitled to a decree of foreclosure, and so no question of priority can arise here. The Appellate Court correctly applied the law to the facts of this case, and its judgment should be affirmed.