George J. J. Guerten, Complainant, v. Stanislaw Zachas et al., Defendants.

Stanislaw Zachas and Rozalia Zachas, Cross-Complainants, v. George J. J. Guerten et al., Cross-Defendants.

George J. J. Guerten, Appellant, v. Stanislaw Zachas and Rozalia Zachas, Appellees.

Gen. No. 33,710.

388

Opinion filed March 11, 1930.

TOWNLEY, WILD, CAMPBELL & CLARK, for appellant; CHARLES V. CLARK and FREDERICK D. CARROLL, of counsel.

EDWIN TERWILLIGER and PEARL M. HART, for appellees.

MR. JUSTICE SCANLAN delivered the opinion of the court.

George J. J. Guerten filed his bill in the superior court of Cook county to foreclose a trust deed securing certain notes and interest coupons. Stanislaw Zachas and Rozalia Zachas, his wife, and Edmond Ostronski, as trustee, were made defendants. The defendants Stanislaw Zachas and his wife filed an answer to the bill and also a cross-bill to have the notes held by Guerten canceled and the trust deed removed as a cloud upon the title. Guerten, cross-defendant, filed an answer to the cross-bill. The bill was taken as confessed against the defendant Ostronski, as trustee. The case was tried before a chancellor, who entered a decree dismissing the original bill for want of equity and granting the relief asked in the cross-bill to the extent of canceling the trust deed held by the complainant Guerten, and removing it as a cloud upon the cross-complainants' title. The decree provided that it was without prejudice to the rights, if any, of the parties to the case to begin, maintain or defend any suit or suits at law on the notes held by Guerten. The complainant and cross-defendant Guerten will be hereinafter referred to as the appellant, and the defendants and cross-complainants Stanislaw Zachas and Rozalia Zachas will be hereinafter referred to as the appellees.

The bill was in the usual form of one for foreclosure and alleged that the appellees had executed the trust deed, notes and interest coupons described therein; that the same were held and owned by the appellant; that there had been a default in the payment of the principal and interest, and that, pursuant to the terms of the trust deed, he had elected to declare due and payable the entire amount of the indebtedness secured by the trust deed. The appellees, in their answer, alleged (*inter alia*) that they were of Polish nationality and were unable to read or write the English language; that about April 1, 1925, "they were having domestic difficulties between themselves"; that one Ostronski, also of Polish nationality, had been engaged for several years in the real estate, mortgage loan and insurance business and had held himself out to the appellees and others of said nationality as a competent legal adviser in and about their property rights and domestic relations, and thereby gained the confidence of the appellees; that Zachas consulted him in reference to the proper manner of establishing his interest in the property described in the bill of complaint in the event of a separation between him and his wife; that Ostronski stated that the property was worth about $7,000; that Zachas said that he wanted something to show his interest in the property, that he thought he should have an interest of about $3,000 and that his wife could have the balance of it, or about $4,000; that Ostronski advised him "that a proper and safe method to establish his interest in the said property would be to have a mortgage in the sum of $3,000 executed against said property," which mortgage should be retained and held by him, the said Zachas; that thereupon, at the request of Zachas, Ostronski prepared mortgage notes in the sum of $3,000, together with coupon notes evidencing the interest thereon, and also a trust deed on the said property in the amount of $3,000; that at the same time Ostronski, intending to cheat and defraud appellees, falsely

and fraudulently represented to them that the mortgage notes then and there submitted to them were in the amount of $3,000, but that, as a matter of fact, as appellees were informed and believed, Ostronski, by fraud and circumvention, surreptitiously and without the knowledge of appellees, included among the said notes additional or duplicate notes in the further sum of $3,000, with coupon notes evidencing the interest thereon, which appellees thereupon executed, believing and intending at the time that they were executing mortgage notes in the sum of $3,000 only; that Ostronski thereupon offered to hold the said notes for $3,000 "for safe keeping" for Zachas, to which the latter agreed; that afterwards Zachas demanded the return to him of the said $3,000 in principal notes and said coupon notes and said trust deed, and that Ostronski thereupon delivered to Zachas the said principal notes aggregating $3,000, with interest coupon notes evidencing the interest thereon, but failed to return to him the trust deed, Ostronski representing to him that the trust deed was on file in the recorder's office and could not be returned to him; that no consideration was received by appellees from Ostronski or any other person for or on account of said trust deed or notes, and that said notes and interest coupon notes described in the bill of complaint, "are, as these defendants are informed and believe, the same additional notes and coupons, the signatures to which were obtained surreptitiously and by fraud and circumvention of the said Ostronski."

The cross-bill of appellees sets up substantially the same matters as are set forth in their answer to the bill. It also alleged that appellees are in possession of the premises in question and that the trust deed described in the bill of complaint is a cloud upon the title of appellees, and it prayed that the trust deed might be declared null and void and as a cloud upon

the title of the appellees and that the notes held by appellant should be delivered up and canceled.

In his answer to the cross-bill appellant denied that the notes and trust deed which he held were obtained surreptitiously or by fraud and circumvention in the execution thereof; alleged that about April 13, 1925, the principal notes and interest coupons were offered for sale to him and that he took said notes to the residence of appellees and there interviewed Mrs. Zachas and her daughter, and that he showed them the notes and interest coupons described in the bill and asked them if they were genuine and if they were signed by the appellees and that Mrs. Zachas stated that the notes were genuine and that the appellees owned the property conveyed by the said trust deed, and that thereupon he completed the purchase of said notes and received the trust deed securing the same, and then placed them in the Second Security Bank of Chicago for collection of the notes, and that since that time the appellees have paid all the interest and the first instalment of the principal, amounting to $500, as the notes representing the same matured, except that some of the payments were not made promptly and were delayed for some time after maturity; that the appellees paid the first $500 represented by principal note No. 1 after they were fully aware of all the facts which they now claim to know with respect to the fraud or dishonesty of Ostronski; that he, appellant, bought the notes in question in good faith for value before their maturity; that if any fraud was perpetrated by Ostronski it had been made possible by the action of appellees in executing the notes and trust deed sought to be foreclosed and placing them in the hands of Ostronski; that appellees were estopped to deny the genuineness of the notes, even assuming that they were executed without consideration, because of their acts in placing the notes in the hands of Ostronski knowing that the same were

fair and valid on their face and that they could be easily negotiated by Ostronski; that they were also estopped by the action of Mrs. Zachas in informing appellant, before he purchased the notes, that they were genuine, and by the failure of the appellees to assert the invalidity of the notes when the same were presented to them for payment, and also because of their action in paying the first principal note of $500 and the interest which accrued on all of the notes prior to April 1, 1927.

There is but little conflict in the testimony material to the issues. About April 1, 1925, Stanislaw Zachas and his wife were about to separate because of domestic discord. They owned the premises in question in joint tenancy. In a talk with his wife, Zachas proposed that he be given "some kind of paper on this property" to show his interest in the same, as he was about to depart from the premises and leave her in possession. Mrs. Zachas agreed to the proposition and Zachas went to Ostronski and stated the situation to him and the latter advised Zachas that he, Zachas, "should have a mortgage for $3,000 and that the balance of $4,000 of the value of the property should be left for the family." Zachas told Ostronski to prepare notes for 5 years for $3,000. On or about April 1, 1925, Zachas and his wife went to Ostronski's office and it is conceded that they there, knowingly and intentionally, signed and acknowledged the trust deed which appellant sought to foreclose, and also signed certain principal notes for $3,000 and the interest coupon notes for the same. There were three principal notes signed: One for $500, due April 1, 1926; one for $500, due April 1, 1927, and one for $2,000, due April 1, 1928. These notes were made payable to themselves and were by them indorsed in blank. The testimony of appellees as to the circumstances surrounding the execution of the trust deed and notes is rather meager. Their counsel thus

states appellees' theory of fact as to the execution of the same: "Ostronski told them that the notes and mortgages were for $3,000, together with interest coupon notes covering interest for the period of the mortgage, which was five years. Instead, however, of signing only the $3,000 in principal notes which they had asked Ostronski to prepare and which they supposed they were signing, they were made to sign principal notes totalling $6,000, with appropriate coupons. One set of interest coupon notes and principal notes in the amount of $3,000 was an exact duplicate of the other set held by Zachas. . . . The two sets of notes, of exactly the same appearance and tenor, were all typed at the same time, one set being printed through a black ink ribbon and the other through black carbonized paper." Counsel for the appellant states that "the testimony does not show what happened at the time the papers were executed, but apparently Ostronski caused the defendants to execute not only the original notes aggregating $3,000 with interest coupons, but also carbon copies of these notes and interest coupons, which copies had apparently been made with the same impression on the typewriter as the originals. . . . The complainant owns the original notes and interest coupons. The defendants produced in court the carbon copies thereof duly signed and indorsed by them."

The decree finds that Ostronski, in April, 1926, returned to Zachas "the carbon printed set of said notes with like interest coupons attached." The notes and trust deed were left with Ostronski. As it is conceded that there were but two sets of notes signed by the appellees, the decree, in effect, finds that the notes held by appellant were the original ones executed, and all the circumstances clearly sustain this finding.

Shortly after April 1, Ostronski delivered the original notes and coupons and the trust deed to Mr. Smith, head of the real estate loan department of the Second

Security Bank of Chicago, for the purpose of having the bank find a purchaser for the same. Ostronski was a customer of the bank. The appellant is a druggist and had been doing business with the bank for years and had bought "quite a few" mortgages from it. Smith had been told by appellant that he would like to purchase a mortgage for $3,000 or $4,000, and on April 13, 1925, he told appellant of the mortgage and notes in question and appellant said that he thought he would like to purchase the same, and thereupon it was agreed between them that appellant should leave with Smith his note and a check amounting to the purchase price of the notes, and it was further agreed that appellant should take the notes, visit the premises, examine the same, see the owners and have them identify their signatures on the notes, and that appellant was then to telephone to Smith as to whether or not the deal was satisfactory, the latter agreeing that he would hold the note and check until appellant advised him that the deal was satisfactory. Appellant testified that he went to the premises, examined the same and interviewed Mrs. Zachas, to whom he talked through a girl about 12 or 13 years of age who was there and who he presumed was the daughter of Mrs. Zachas; that he showed the notes in question to Mrs. Zachas and asked her whether she had signed them, and she said that she had; that he then asked her if she owned the property and she indicated by a nod of her head that she did, and he told her that he was figuring on buying the mortgage. Mrs. Zachas testified that appellant called on her not very long after she signed the notes and "just asked her whether that was her name on there . . . He just showed me the papers and that is all he asked me," but she did not specifically deny appellant's testimony as to what was said and done. She did not testify that she did not fully and completely understand what was said and done at the time of the conversation; nor did she deny that appellant told her that he was going

to buy the mortgage. Thereafter appellant telephoned Smith that he had visited the premises and that the deal was satisfactory to him and that he would take the mortgage. Appellant then delivered the various notes and interest coupons to the bank for collection and on October 1, 1925, the first interest coupon became due and was paid at the bank, but by whom the records of the bank do not show. The son of the appellees testified that "neither my father nor mother, nor anyone for them, nor anyone of our family paid the prior instalments of interest or the partial payments on those notes," but neither of the appellees testified in reference to this payment. Appellant testified that when the second instalment of interest and the principal note for $500 became due on April 1, 1926, he went to the premises and there saw Zachas and told him that the mortgage would have to be paid or he would start foreclosure proceedings. Although Zachas testified, he did not deny this conversation, and when the solicitor for appellant sought on cross-examination to interrogate him in reference to it the solicitor for appellees objected to the interrogation on the ground that it was not proper cross-examination, that they had not gone into that matter on direct. The interest coupon which matured April 1, 1926, was paid at the bank. The son of appellees testified that "they" did not make the payment, but neither of the appellees testified in reference to this payment. After April 1, 1926, when the principal note No. 1 for $500 matured, and until it was paid in full on October 20, 1926, Smith wrote various letters to appellees telling them that unless the note was paid foreclosure proceedings would be started. In one, dated July 30, 1926, Smith stated that only $300 had been paid on the said note and that unless the balance of $200 was paid on or before July 31, the owner of the mortgage would deliver the same to his attorneys with instructions to start foreclosure proceedings. The appellees produced a letter addressed to them, dated

October 18, 1926, signed by Smith, in which the latter advised them that unless the balance of $100 then due on the said note and the interest which was due October 1, 1926, were paid promptly, foreclosure proceedings would be started. The appellees appear to have ignored all the letters but the last one. After the receipt of that one, they and their adult son and a daughter had a conference with Smith at the bank. The appellees then paid $75 that represented the interest due October 1, 1926, and they agreed to pay, on the next day, the said $100 balance. On the following day this son went to the bank and paid to Smith the said $100. Smith testified that when appellees called on him on October 1, they did not tell him that the notes did not belong to Ostronski, that they said that Ostronski was holding them for them but that they did not expect that he would sell them; that they did not state that Ostronski had no right to offer the notes for sale. Smith further testified that the bank never sent any notices to Ostronski in reference to the notes.

The appellees have assigned two cross errors: "First, that the Court erred in decreeing that the decree should be without prejudice to the right to bring a suit at law upon the notes, and second, that the Court erred in refusing to decree that the notes and coupons be surrendered and cancelled as having been obtained by fraud or circumvention in the execution thereof."

The appellant contends that the chancellor erred in dismissing his bill for want of equity and in entering a decree in favor of appellees on the cross-bill. After a very careful consideration of the record we are satisfied that this contention is a meritorious one. The appellees strenuously argue that "the complainant's notes were obtained by fraud or circumvention in the execution thereof and without negligence on the part of the defendants," and in support of this contention they frequently state that the decree finds that the notes

held by the appellant were the notes executed through the fraud of Ostronski. The decree makes no such finding. It finds that Ostronski prepared "a trust deed or mortgage in the sum of $3,000 but he then and there falsely and fraudulently represented to the cross complainants, who could not read or write the English language, that the mortgage notes then and there submitted for their signature were in the amount of $3,000 with appropriate interest coupons, whereas, as a matter of fact, the said Edmond Ostronski by fraud and circumvention surreptitiously and without the knowledge of the cross complainants included among said mortgage notes and coupons to be signed by the cross complainants in addition to one set of principal notes for $3,000, with interest coupons, certain additional notes in the sum of $3,000, making a total of $6,000 in notes with interest coupons, both $3,000 sets of said notes with interest coupons, except for signatures thereon, being typewritten, one set being exact carbon duplicates of the other, all of which said notes the cross complainants executed believing and intending at the time they were executing mortgage notes in the sum of $3,000 only." The decree further found that Ostronski returned to the appellees the carbon printed set of said notes with interest coupons attached, and that the original notes were purchased by appellant "in good faith, without notice." That the appellees went to the office of Ostronski for the purpose of executing a trust deed and one set of principal notes for $3,000 and interest coupons is conceded by appellees in their pleadings and evidence. The appellees executed the trust deed for $3,000, in accordance with their purpose, but instead of executing only one set of principal notes for $3,000, through the fraud of Ostronski they executed two sets, each for the sum of $3,000. What are called the "original" notes were purchased by appellant from the bank, and what are called the

"carbon copy" notes were returned to Zachas by Ostronski in April, 1926. It is a familiar principle that a party cannot urge fraud as a defense unless it appears that he has sustained damage by reason of the fraud. The act of Ostronski which caused injury to Zachas was not his fraud in having two sets of notes executed, but his fraud in delivering the original notes and coupons with the trust deed to the Second Security Bank for the purpose of having the bank find a purchaser for the same, which Zachas enabled him to do by leaving them with him indorsed in blank. Zachas, under the agreement between him and his wife, became the sole owner of the original principal and coupon notes and was entitled to the immediate possession of the notes and the trust deed. Zachas stated to Ostronski, in the presence of Mrs. Zachas, "the papers are mine," but he added that he did not wish to keep them as he might lose or sell them, and when Ostronski agreed to keep the mortgage and notes Zachas said to him: "You keep the notes. When I can't work or have sickness I can live on them." It is clear from the testimony that Mrs. Zachas made no objection to anything that was said or done by her husband at the time of the execution of the papers. Zachas testified: "I left the notes with him." Ostronski, in his possession of the notes and mortgage, was acting as the agent of Zachas. It was this agent who committed the fraud that caused the damage. Where one of two innocent parties must suffer by reason of the fraud or wrongful conduct of another, the burden must fall upon him who put it in the power of the wrongdoer to commit the fraud or do the wrong. (*Connor v. Wahl*, 330 Ill. 136.) We think that case controls the instant one.

The appellees claim that *Olds v. Cummings*, 31 Ill. 188, 192, governs the present case and that under the decision in that case it was the duty of the appellant to inquire of the appellees if there was any reason why

the mortgage should not be paid, and that "if Mr. Guerten had gone either to Mr. Zachas or Mrs. Zachas with a competent interpreter and made them understand that he was inquiring if there was any reason why they should not pay the mortgage, and that, if not, he would purchase it, there would have been an immediate effective protestation against any liability on the notes." In *Connor v. Wahl, supra,* in distinguishing the *Olds* case, the court said:

"The only question before the court in the *Olds* case was whether the defense of usury, which was good as against the mortgagee, could be enforced against his assignee, with or without notice. There was no question in that case as to the effect of the release of a trust deed by the trustee, or the failure of the mortgagor to take up the first note and mortgage before he executed the second note and mortgage, or the right of the assignee to rely on what the public record showed with reference to the title. There was no evidence showing any equities between the mortgagor and the assignee except that the mortgagor claimed usury as against the mortgagee. The mortgagor had not by any negligence on his part defeated or curtailed his right to impose that defense against the assignee. On account of these additional questions which enter into the case at bar, the *Olds* case is not conclusive of the questions raised in this case."

We may add that in the *Olds* case the decree found that the complainant had notice of the usury and therefore he failed to show any equitable ground why the defendant had not the right to interpose the defense of usury. In our judgment the case of the appellant presents stronger equitable grounds than *Connor v. Wahl, supra,* why the doctrine of the *Olds* case should not control. By the agreement Mrs. Zachas became the equitable owner of the premises in question, and while no deeds passed to give her a legal title to the same,

equity will presume that to be done which should be done; and even if the rule in *Olds v. Cummings, supra,* could be applied to a case like the present one, she was the equitable owner of the property, and we think the evidence shows that the appellant, prior to the time that he purchased the notes, brought himself fairly within the spirit of that rule. That the appellant showed her the notes is admitted, and that he told her he was figuring on buying the mortgage is not disputed. She recognized the right of her husband, under the agreement, to sell the notes, and, according to her own testimony, she did not state or intimate to the appellant at the time that he called on her that there was any good reason why he should not purchase the notes. She and her husband were then separated and not living in the same premises, and it is a reasonable inference from all the facts that she supposed from what the appellant said to her that her husband was about to sell the notes. Moreover, as she was present and sanctioned the action of her husband in leaving the notes and trust deed with Ostronski, she is hardly in a position to interpose the rule of the *Olds* case. As Zachas made it possible for his agent, Ostronski, to sell the notes, he is in no position to invoke that rule, and therefore the fact that the appellant did not inquire of Zachas concerning the notes, before he purchased them, can avail Zachas nothing.

The appellees contend that there was no consideration for the notes and that this is a good defense "even if the execution of the notes were ratified." There is no merit in this contention, as the notes and mortgage were executed in furtherance of the agreement between the appellees and there was, therefore, adequate consideration for the same.

The appellant contends that "with full knowledge of all the facts, the defendants, by paying part of the principal note which matured on April 1, 1926, and

the interest which matured on October 1, 1926, ratified and confirmed the act of Ostronski in transferring the defendants' notes to the complainant.'' This contention has been argued strenuously and with force, but in the view that we have taken of this appeal we do not consider it necessary to pass upon the same.

The decree of the superior court of Cook county is reversed and the cause is remanded with directions to dismiss the cross-bill and to enter a decree for the appellant on the original bill.

*Reversed and remanded with directions.*

BARNES, P. J., and GRIDLEY, J., concur.